UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

UNITED STATES OF AMERICA

- v. -

CALVIN DARDEN, JR.,

Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**SUPERSEDING INDICTMENT**

S3 23 Cr. 134 (VSB)

The Grand Jury charges:

## Overview

1. At all times relevant to this Indictment, CALVIN DARDEN, JR., the defendant, was a purported businessman, whose coconspirator ("CC-1") was an agent certified by and registered with the National Basketball Association Players Association. From at least in or about 2019 through in or about 2021, DARDEN, JR., and CC-1 orchestrated a scheme to defraud two professional basketball players ("Athlete-1" and "Athlete-2," respectively) of a total of approximately $8 million, by inducing Athletes-1 and -2 to transfer money to accounts that DARDEN, JR., controlled based on fraudulent documents and false representations. Specifically, DARDEN, JR.: (a) fraudulently induced Athlete-1 to transfer approximately $1 million to CC-1, purportedly to fund a loan to a potential athlete client ("Athlete-3") of a sports agency for which CC-1 worked ("Agency-1"); and (b) fraudulently induced Athlete-2 to transfer approximately $7 million to DARDEN, JR., purportedly to purchase a professional women's basketball team ("Team-1"). In truth and in fact, DARDEN, JR., and CC-1 used these funds for their personal benefit.

### The Purported Athlete-3 Loan

2. Athlete-1 funded Agency-1 with the plan that Athlete-1 would formally assume control of Agency-1 once Athlete-1's retired from professional basketball. CC-1 served as the lead agent for Agency-1.

3. In or about November 2019, CC-1 informed Athlete-1 that Athlete-3, a highly touted athlete preparing for the National Basketball Association's (the "NBA") draft, had signed with CC-1 and Agency-1. CC-1 further informed Athlete-1 that Athlete-3 needed approximately $1,000,000 as a loan to pay living and training expenses, in preparation for the upcoming NBA draft.

4. CC-1 subsequently sent Athlete-1 a player-agent contract purportedly signed by Athlete-3, agreeing that CC-1 was to serve as Athlete-3's agent (the "Athlete-3 Contract"). The Athlete-3 Contract was purportedly electronically signed by Athlete-3 and Athlete-3's mother. In truth and in fact, Athlete-3 never signed the Athlete-3 Contract that CC-1 provided to Athlete-1. CC-1 had forged the electronic signatures of both Athlete-3 and Athlete-3's mother on the Athlete-3 Contract. Indeed, neither Athlete-3 nor his mother ever had any conversations with CC-1, or with CALVIN DARDEN, JR., the defendant, about signing with CC-1 or Agency-1, or receiving a $1,000,000 loan.

5. On or about November 20, 2019, and without knowledge that CC-1 had forged the signatures of Athlete-3 and Athlete-3's mother on the Athlete-3 Contract, Athlete-1 transferred approximately $1,000,000 to a bank account (the "CC-1 Account") that CC-1 controlled. Based on CC-1's representations, Athlete-1 understood that these funds would be used to make a loan to Athlete-3, in part to induce Athlete-3 to sign with Agency-1. In truth and in fact, none of the funds Athlete-1 sent to the CC-1 Account were ever transferred to Athlete-3 or used for Athlete-3's

benefit. Instead, CC-1 immediately used approximately $306,642 of the funds transferred by Athlete-1 to pay off a debt that CC-1 personally incurred. CC-1 also transferred approximately $544,000 from the CC-1 Account to a bank account (the "Darden Account") controlled by CALVIN DARDEN, JR., the defendant, held at a bank located in the Southern District of New York.

6. CALVIN DARDEN, JR., the defendant, and CC-1 papered the transfer from Athlete-1 with the following fraudulent documentation: (a) a promissory note in which an entity controlled by CC-1 agreed to repay $1,050,000 to Athlete-1; and (b) a promissory note in which an entity controlled by DARDEN, JR., in turn agreed to repay $1,050,000 to the entity controlled by CC-1.

7. Between in or about December 2020 and in or about February 2021, Athlete-1 communicated with CALVIN DARDEN, JR., the defendant, and CC-1 in an attempt to recoup the funds he believed had been loaned to Athlete-3. During this period, both DARDEN, JR., and CC-1 purported at various times to be working on ensuring Athlete-1 was repaid by Athlete-3, despite the fact that Athlete-3 had never, in fact, received any of Athlete-1's funds, and Athlete-3 was never in communication with DARDEN, JR., or CC-1.

8. Athlete-1 was never repaid any of the approximately $1,000,000 that Athlete-1 sent to CC-1 and intended as a loan to Athlete-3.

### The Scam Professional Basketball Team Purchase

9. In or about late 2019 or early 2020, CC-1 was introduced to Athlete-2. Athlete-2 retained CC-1 as Athlete-1's agent in or about the spring of 2020.

10. In or about the spring of 2020, Athlete-2 began discussing with CC-1 the possibility of purchasing Team-1. In connection with discussions about the purchase of Team-1 by Athlete-

2, CC-1 introduced Athlete-2 to CALVIN DARDEN, JR., the defendant. In or about the spring or summer of 2020, Athlete-2 took part in a video call (the "Video Call") involving DARDEN, JR., CC-1, and a relative of DARDEN, JR.'s ("Relative-1"). Relative-1 is a former corporate executive who serves or has served on the boards of multiple public companies. Because Athlete-2's professional basketball league prohibited current players from purchasing Team-1, DARDEN, JR., CC-1, and Relative-1 discussed with Athlete-2 an arrangement in which Athlete-2 would indirectly purchase Team-1 through a company ("Company-1") purportedly controlled by Relative-1, while DARDEN, JR., and CC-1 would facilitate the purchase and play a role in the operation of Team-1.

11. CALVIN DARDEN, JR., the defendant, created a slide deck outlining a "vision plan" for the purchase of Team-1 by Company-1. Subsequent to the Video Call, CC-1 provided Athlete-2 with the "vision plan." The "vision plan" claimed, among other things, that Company-1 was led by Relative-1 and was advised by a board including several prominent individuals in sports, entertainment, and corporate America. In truth and in fact, and as DARDEN, JR., well knew, at least three of those individuals never served as advisors to Company-1.

12. Athlete-2 planned to finance his purchase of Team-1 through a line of credit he had with a financial institution that was insured by the Federal Deposit Insurance Corporation ("Bank-1"). On or about October 22, 2020, CC-1 transmitted a copy of the "vision plan" to Bank-1, and Bank-1 understood that the purpose of Athlete-2's line of credit was to purchase Team-1.

13. On or about November 11, 2020, Athlete-2 signed a $7 million promissory note with Company-1, and between in or about November 2020 and in or about December 2020, Athlete-2 caused $7 million to be transferred to the Darden Account from the line of credit with Bank-1. Based on representations made by CALVIN DARDEN, JR., the defendant, and CC-1,

Athlete-2 understood that these payments were in order for Athlete-2 to purchase and become the full owner of Team-1.

14. In truth and in fact, none of the money Athlete-2 sent to the Darden Account went toward the purchase of Team-1, and Athete-2 did not become an owner of Team-1. Instead, from approximately November 2020 until approximately December 2021, CALVIN DARDEN, JR., the defendant, transferred more than approximately $1 million of the funds to CC-1, and the funds were ultimately transferred between a number of accounts controlled by DARDEN, JR., or CC-1 in an attempt to conceal the location, ownership, and source of the funds. DARDEN, JR., ultimately retained a substantial portion of the funds for himself and his relatives, sending more than $500,000 to a relative and more than $400,000 to a cryptocurrency exchange for his benefit. DARDEN, JR., also used some of the funds to pay for luxury goods for himself, including approximately $880,000 to luxury car companies, more than $300,000 to art galleries, and more than $100,000 to purchase a piano, among other things. DARDEN, JR., also spent in excess of approximately $1 million in connection with purchasing and making improvements to his personal residence, including, among other things, the addition of a koi pond.

15. After transferring the funds described above, Athlete-2 believed he had purchased Team-1. Athlete-2 attempted to communicate with CALVIN DARDEN, JR., the defendant, and CC-1 about his purported ownership of Team-1, but Athlete-2 never received documents confirming that the sale of Team-1 had been finalized. Eventually, Athlete-2 learned that Team-1 had, in fact, been sold to others. Athlete-2 was never repaid any of the approximately $7 million that Athlete-2 sent to DARDEN, JR., intended to fund the purchase of Team-1.

## COUNT ONE
### (Conspiracy to Commit Wire Fraud and Bank Fraud)

The Grand Jury further charges:

16. The allegations contained in paragraphs 1 through 15 of this Indictment are repeated and realleged as if fully set forth herein.

17. From at least in or about 2019 through at least in or about 2021, in the Southern District of New York and elsewhere, CALVIN DARDEN, JR., the defendant, and others known and unknown, willfully and knowingly combined, conspired, confederated, and agreed together and with each other to commit wire fraud, in violation of Title 18, United States Code, Section 1343.

18. It was a part and an object of the conspiracy that CALVIN DARDEN, JR., the defendant, and others known and unknown, knowingly having devised and intending to devise a scheme and artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises, would and did transmit and cause to be transmitted by means of wire, radio, and television communication in interstate and foreign commerce, writings, signs, signals, pictures, and sounds for the purpose of executing such scheme and artifice, to wit, DARDEN, JR., agreed to fraudulently induce Athletes-1 and -2 to wire a total of approximately $8,000,000 based on misrepresentations about how their money would be used.

19. It was further a part and an object of the conspiracy that CALVIN DARDEN, JR., the defendant, and others known and unknown, knowingly would and did execute, and attempt to execute, a scheme and artifice to defraud a financial institution, as that term is defined in Title 18, United States Code, Section 20, and to obtain moneys, funds, credits, assets, securities, and other property owned by, and under the custody and control of, such a financial institution, by means of false and fraudulent pretenses, representations, and promises, in violation of Title 18, United States

Code, Section 1344, to wit, DARDEN, JR. fraudulently induced a financial institution to wire approximately $7,000,000 from an account controlled by Athlete-2 based on misrepresentations about how that money would be used.

(Title 18, United States Code, Section 1349.)

## COUNT TWO
### (Wire Fraud)

The Grand Jury further charges:

20.  The allegations contained in paragraphs 1 through 15 of this Indictment are repeated and realleged as if fully set forth herein.

21.  From at least in or about 2019 through at least in or about 2021, in the Southern District of New York and elsewhere, CALVIN DARDEN, JR., the defendant, knowingly having devised and intending to devise a scheme and artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses, representations and promises, for the purpose of executing such scheme and artifice, transmitted and caused to be transmitted by means of wire communication in interstate and foreign commerce writings, signs, signals, pictures, and sounds, to wit, DARDEN, JR., fraudulently induced Athletes-1 and -2 to wire a total of approximately $8,000,000 based on misrepresentations about how their money would be used and, ultimately, used that money for their personal benefit.

(Title 18, United States Code, Sections 1343 and 2.)

## COUNT THREE
### (Bank Fraud)

The Grand Jury further charges:

22.  The allegations contained in paragraphs 1 through 15 of this Indictment are repeated and realleged as if fully set forth herein.

23. From at least in or about 2020 through at least in or about 2021, in the Southern District of New York and elsewhere, CALVIN DARDEN, JR., the defendant, knowingly executed, and attempted to execute, a scheme and artifice to defraud a financial institution, as that term is defined in Title 18, United States Code, Section 20, and to obtain moneys, funds, credits, assets, securities, and other property owned by, and under the custody and control of, such a financial institution, by means of false and fraudulent pretenses, representations, and promises, to wit, DARDEN, JR., fraudulently induced a financial institution to wire approximately $7,000,000 from an account controlled by Athlete-2 based on misrepresentations about how that money would be used.

(Title 18, United States Code, Sections 1344 and 2.)

## COUNT FOUR
### (Money Laundering Conspiracy)

The Grand Jury further charges:

24. The allegations contained in paragraphs 1 through 15 of this Indictment are repeated and realleged as if fully set forth herein.

25. From at least in or about 2019 through at least in or about 2021, in the Southern District of New York and elsewhere, CALVIN DARDEN, JR., the defendant, and others known and unknown, willfully and knowingly combined, conspired, confederated, and agreed together and with each other to commit money laundering, in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i).

26. It was a part and an object of the conspiracy that CALVIN DARDEN, JR., the defendant, and others known and unknown, knowing that the property involved in a financial transaction represented the proceeds of some form of unlawful activity, would and did conduct and attempt to conduct such a financial transaction, which transaction affected interstate and

foreign commerce and involved the use of a financial institution which was engaged in, and the activities of which affected, interstate and foreign commerce, and which in fact involved the proceeds of specified unlawful activity, to wit, the wire fraud and bank fraud offenses charged in Counts Two and Three of this Indictment, in violation of Title 18, United States Code, Sections 1343 and 1344, knowing that the transactions were designed in whole and in part to conceal and disguise the nature, the location, the source, the ownership, and the control of the proceeds of specified unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i), to wit, DARDEN, JR., transferred fraudulently obtained funds through a number of different accounts in order to conceal the location, source, and ownership of the stolen funds.

(Title 18, United States Code, Section 1956(h).)

## COUNT FIVE
### (Money Laundering)

The Grand Jury further charges:

27. The allegations contained in paragraphs 1 through 15 of this Indictment are repeated and realleged as if fully set forth herein.

28. From at least in or about 2019 through in or about 2021, in the Southern District of New York and elsewhere, in CALVIN DARDEN, JR., the defendant, knowing that the property involved in a financial transaction represented the proceeds of some form of unlawful activity, conducted and attempted to conduct such a financial transaction, which transaction affected interstate and foreign commerce and involved the use of a financial institution which was engaged in, and the activities of which affected, interstate and foreign commerce, and which in fact involved the proceeds of specified unlawful activity, to wit, the wire fraud and bank fraud offenses charged in Counts Two and Three of this Indictment, in violation of Title 18, United States Code, Sections 1343 and 1344, knowing that the transaction was designed in whole and in part to conceal and

disguise the nature, the location, the source, the ownership, and the control of the proceeds of specified unlawful activity, to wit, DARDEN, JR., transferred fraudulently obtained funds through a number of different accounts in order to conceal the location, source, and ownership of the stolen funds.

(Title 18, United States Code, Sections 1956(a)(1)(B)(i), and 2.)

## FORFEITURE ALLEGATIONS

29. As a result of committing the wire fraud offenses alleged in Counts One and Two of this Indictment, CALVIN DARDEN, JR., the defendant, shall forfeit to the United States pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461(c), any and all property, real and personal, that constitutes or is derived from proceeds traceable to the commission of said offenses, including but not limited to a sum of money in United States currency representing the amount of proceeds traceable to the commission of said offenses that the defendants personally obtained.

30. As a result of committing the bank fraud offenses alleged in Counts One and Three of this Indictment, CALVIN DARDEN, JR., the defendant, shall forfeit to the United States, pursuant to Title 18, United States Code, Section 982(a)(2)(A), any and all property constituting, or derived from, proceeds the defendant obtained directly or indirectly, as a result of the commission of said offenses, including but not limited to a sum of money in United States currency representing the amount of proceeds traceable to the commission of said offenses.

31. As a result of committing the money laundering offenses alleged in Counts Four and Five of this Indictment, CALVIN DARDEN, JR., the defendant, shall forfeit to the United States, pursuant to Title 18, United States Code, Section 982(a)(1), any and all property, real and personal, involved in said offenses, or any property traceable to such property, including but not

limited to a sum of money in United States currency representing the amount of property involved in said offenses.

### Substitute Assets Provision

32. If any of the above-described forfeitable property, as a result of any act or omission of the defendants:

    (a) cannot be located upon the exercise of due diligence;

    (b) has been transferred or sold to, or deposited with, a third person;

    (c) has been placed beyond the jurisdiction of the Court;

    (d) has been substantially diminished in value; or

    (e) has been commingled with other property which cannot be subdivided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p) and Title 28, United States Code, Section 2461(c), to seek forfeiture of any other property of the defendants up to the value of the above forfeitable property.

(Title 18, United States Code, Section 981;
Title 21, United States Code, Sections 853; and
Title 28, United States Code, Section 2461.)

FOREPERSON

DAMIAN WILLIAMS
United States Attorney

11