O9HJDAR1

```
1    UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
2    ------------------------------x

3    UNITED STATES OF AMERICA,

4               v.                              23 Cr. 134 (VSB)

5    CALVIN DARDEN, JR.,

6                                               Conference
                    Defendant.
7    ------------------------------x

8
                                                New York, N.Y.
9                                               September 17, 2024
                                                10:00 a.m.
10

11   Before:

12                     HON. VERNON S. BRODERICK,

13                                              District Judge

14                          APPEARANCES

15   DAMIAN WILLIAMS
          United States Attorney for the
16        Southern District of New York
     KEVIN MEAD
17   STEPHEN J. RITCHIN
     WILLIAM C. KINDER
18   BRANDON C. THOMPSON
          Assistant United States Attorney
19
     DONALDSON CHILLIEST & MCDANIEL LLP
20   BY:  XAVIER R. DONALDSON
          -and-
21   ANTHONY RICCO
     STEVEN Z. LEGON
22        Attorneys for Defendant

23   Also Present:
     Alexander Ross, Paralegal
24   Arjun Ahuja, Paralegal
     Melissa Baccari, FBI Special Agent

25
```

O9HJDAR1

1           (In open court)

2           MR. RICCO:  I was going to say, your Honor, if it's

3    okay with the Court, we moved over here because it's a better

4    view of the jury.  We'll move back, of course, when we start.

5           THE COURT:  Okay.  The only thing I ask is that when I

6    do introduce the folks, stand up just so the jury can make sure

7    they can see you, that's fine.

8           All right.  Well, why don't you discuss the issue, and

9    then we'll figure it out.  But are there other issues we should

10   take up before we finish getting everything ready to bring the

11   jurors over?

12          MR. MEAD:  We have some minor things, your Honor.  I

13   defer to the Court.  If there's a panel ready, we could take

14   them up at lunch or the end of the day.  I defer to the Court

15   for the end timing.

16          THE COURT:  Why don't we do that.  I think there

17   probably is a panel across the street waiting to come over.  So

18   why don't we do that.  Let me just confirm, Mr. Ricco, does it

19   make sense to not swear them in today?

20          MR. RICCO:  Yes.

21          THE COURT:  Okay.  All right.  Great.  We're all in

22   agreement, so we'll bring the panel over now.  And as I

23   mentioned, we'll put as many folks as we can in the jury box

24   and hopefully get to 32, maybe using the first two rows.  And

25   then I'll start asking the questions.

O9HJDAR1

| | |
|---|---|
| 1 | MR. MEAD:  Logistically, Mr. Ahuja, one of our |
| 2 | paralegals, is going to be here for the very beginning of jury |
| 3 | selection so the jury can see him.  We're then going to send |
| 4 | him out for the rest of the day.  But I think we were going to |
| 5 | have him sit here, if that's okay with the Court.  I'm not sure |
| 6 | where else we could put him. |
| 7 | THE COURT:  That's fine.  We would then -- I'll either |
| 8 | have the prospective jurors sit to my right, your left, or -- |
| 9 | in other words, to fill out the 32.  Okay. |
| 10 | MR. DONALDSON:  One other issue logistically, so |
| 11 | Ms. Reed, of course, is one of the defense counsel on the team. |
| 12 | She's not going to be here today.  So I'm thinking we might |
| 13 | want to mention that to the jurors that she will be here at |
| 14 | some point.  I don't want her to appear and who is that? |
| 15 | THE COURT:  Is Mr. Legon going to be here? |
| 16 | MR. RICCO:  He's going to be here.  He's on his way. |
| 17 | THE COURT:  Why don't we wait. |
| 18 | MR. DONALDSON:  Let's wait till Mr. Legon gets here. |
| 19 | As far as Ms. Reed is concerned, she will be here at the start |
| 20 | of the trial, but not for jury selection. |
| 21 | THE COURT:  Okay.  All right.  Great.  Thank you. |
| 22 | (Pause) |
| 23 | MR. RICCO:  Judge, I was just in touch with Mr. Legon. |
| 24 | I think we should probably get started because he has |
| 25 | difficulty controlling his time. |

O9HJDAR1

```
1              THE COURT:  Okay.

2              MR. RICCO:  So --

3              THE COURT:  So we might as well -- Mr. Mead, you

4    mentioned there might be some preliminary things.  Are they

5    relatively quick?

6              MR. MEAD:  Yes, your Honor.  I think so.

7              One is this is entirely the government's fault, but we

8    suggested moving to a larger courtroom for the trial.  Looking

9    at the size of the tables, which had kind of been our main

10   concern, I think that the Court's courtroom makes more sense.

11   Obviously, for jury selection I think we should stay here, but

12   if possible for the Court, I think it would make sense to move

13   back to the Court's courtroom for Monday.

14             THE COURT:  Any thoughts on that from the defense?  I

15   don't have a problem with that, but we can fit 14 in the jury

16   box.

17             MR. DONALDSON:  I don't have a problem with that.  The

18   only thing I would ask is that we do my electronic check up

19   there sometime this week.  I just want to make sure everything

20   works up there like it works down here, so we can do that.

21   Other than that, it's fine.  More comfortable is more

22   comfortable.

23             THE COURT:  Okay.  All right.

24             MR. MEAD:  There are a couple of motions the

25   government has filed, two under seal, and then the motion about
```

O9HJDAR1

1    the Wiseman cross.  I think that the defense's responses to

2    that I think are due on Wednesday is my understanding.

3         We discussed introducing documents via Federal Rule of

4    Evidence 902(11), which is the certifications to authenticate

5    business records.  I've had a couple of conversations with

6    defense counsel.  My understanding is that they generally are

7    not planning to challenge authenticity on that ground, but

8    they're still thinking about it to some extent.

9         I'm not sure if it makes sense to kind of put some

10   kind of deadline on it or for us is talk further about it.  I

11   don't think there will be a challenge to authenticity.  I don't

12   think a challenge to authenticity, even if one were made, would

13   prevail, but we want to make sure we're not delaying the trial

14   for that.

15        THE COURT:  If you had the option, you may decide to

16   call the person if you wanted.

17        So let me turn to the defense.  Is it that you haven't

18   looked at the documents yet so you're not quite sure?  In other

19   words, what's the -- because the issue would be whether the

20   government would call a live person or have me rule that the

21   certification is sufficient to overcome any objection.

22   Mr. Donaldson?

23        MR. DONALDSON:  We have had some discussions with the

24   government about this issue.  The government's correct that

25   there likely will not be an objection.  We have been going

O9HJDAR1

```
 1   through all exhibits.  My issue, as I told the government, is

 2   that I found some documents that in my opinion just weren't

 3   supposed to be where they claim they were.  And so because of

 4   that, I wasn't willing to wholesale consent to the authenticity

 5   of certain packages of documents because, again, quite frankly,

 6   some documents just weren't where they were supposed to be.  So

 7   I told them I would get back to them shortly, and I will do

 8   that this afternoon or sometime this evening.

 9              THE COURT:  Okay.  I'd like you to do that by

10   Wednesday to provide them -- in other words, where those issues

11   are — and by "issues," I mean where you have a package of

12   documents that are under a certification where you think that

13   several documents within that are not properly part of that

14   batch so that we can figure that out.  If need be, we can

15   have -- I can hear from the parties later in the week so we can

16   resolve that issue if there's still a problem.

17              The other option is if there are documents that -- and

18   again, it's up to the parties, but if there are documents the

19   government wasn't going to rely on anyway and the certification

20   otherwise meets the defense scrutiny, we can just excise the

21   other -- I mean, I don't know what the certification says, but

22   if the parties agree, we can move forward that way.  And look,

23   obviously, Mr. Donaldson, Mr. Ricco, I'm not -- whatever you

24   decide to do, it's entirely up to you.  We just need to know

25   sooner rather than later.
```

O9HJDAR1

1      MR. DONALDSON:  I understand.  Thank you.

2      MR. MEAD:  The Court asked the parties to confer as to

3  whether the Court should instruct the jurors not to watch

4  *Dancing with the Stars*, and we both think that is the right

5  course.  And we think the Court should instruct the jury not to

6  watch that television show.

7      THE COURT:  Should I tell him why?  When does the

8  witness start on the show?

9      MR. MEAD:  I believe it's tonight.

10      MR. DONALDSON:  I believe it's tonight.  And there is

11  just -- I believe it's tonight, and I don't know whether or not

12  the Court's instruction goes as far as the dancing with the

13  stars show as well as these podcasts that now are popping up

14  where the potential witness is talking about everything that he

15  can talk about.  So I would ask the Court in its general

16  instructions to have them not watch anything related to the

17  witness.

18      Again, I just think that he's in the interest of I

19  guess promoting his *Dancing with the Stars* show and also

20  promoting other things, he's doing a lot of now podcasts and --

21  well, he has a podcast and doing other thing, so I think that's

22  important that we instruct the jury not to watch anything

23  related to Mr. -- well, the witness.

24      THE COURT:  You can say his name, right?

25      MR. DONALDSON:  Okay.  Mr. Howard.

O9HJDAR1

1          THE COURT:  Okay.  Any objection from the government

2    to that?

3          MR. MEAD:  No.  We think that makes sense as well,

4    your Honor.

5          THE COURT:  Okay.  With regard to the motion that was

6    filed I think yesterday under seal, my understanding is that

7    the defense intends to cross-examine about the issues that were

8    discussed in that letter.  Do you intend, Mr. Donaldson, to

9    file an opposition?

10          MR. DONALDSON:  Are we speaking of the motion that was

11    filed yesterday under seal?

12          THE COURT:  Correct.

13          MR. DONALDSON:  Yes.

14          THE COURT:  All right.  When in the order of witnesses

15    is that person going to be called as a witness?

16          MR. MEAD:  Wednesday morning we think, your Honor.

17          THE COURT:  Okay.  So Mr. Donaldson, I'd like to get

18    any objection that you have.  Since we're getting other things

19    on Wednesday, why don't we say on Wednesday so that we can

20    round that out and figure out exactly -- because my

21    understanding is or the phrasing that the government used

22    was -- well, to the extent that your cross-examination would be

23    circumscribe as to particular issues relating to what the

24    government discussed, I'd like you to meet and confer to figure

25    out whether the government has views with regard to certain

O9HJDAR1

1  parts of it, your cross, or not.  But otherwise I'd like to get

2  the opposition by Wednesday.

3          MR. DONALDSON:  I'll get the opposition to the Court

4  by Wednesday.

5          THE COURT:  Okay.  Mr. Mead?

6          MR. MEAD:  I assume the Court means Wednesday

7  tomorrow, not Wednesday --

8          THE COURT:  You know what?  Why don't we make it

9  Thursday.  I had Monday on the brain.  Sorry.  Why don't we

10  make it Thursday.

11          MR. DONALDSON:  I did as well.  I thought today was

12  Monday.

13          THE COURT:  Okay.  So Thursday.  But the other

14  oppositions are due tomorrow.

15          MR. MEAD:  Just an evidentiary issue that I don't

16  think there will be an issue with, but I wanted to put on the

17  record now, the co-conspirator in this case is Charles Briscoe.

18  We seized phones from Mr. Briscoe, we do intend to introduce

19  evidence from those phones.  Mr. Briscoe through his attorney

20  requested the return of those phones, and we returned them to

21  him as evidence.

22          So our plan to introduce the documents would be to

23  call the individual who extracted those phones.  He will

24  testify to the extracted phones with a particular serial

25  number.  We'll link those serial numbers to Mr. Briscoe, and

O9HJDAR1

1    he'll testify that certain documents from the extraction are

2    true and accurate copies of materials that were on that

3    extraction.  I don't think any of that is controversial, but

4    obviously it's an important part of the case and I wanted to

5    front it for the Court and defense.

6            THE COURT:  Mr. Donaldson?

7            MR. DONALDSON:  We don't see a problem with that,

8    Judge.  We'll address it when it comes, but I have no issue

9    with that right now.

10           MR. MEAD:  And then last issue, your Honor, on the

11   defense case, we're very grateful that the defense provided a

12   witness list on Friday evening.  A couple of issues kind of

13   related to that.  One is that there are two lawyers on that

14   defense witness list.  It is my understanding that the defense

15   is not going to assert any sort of advice of counsel or

16   presence of counsel defense.  There's been no notice here.

17           My general understanding from my conversation with the

18   defense was the same as to that.  But I think the defense is

19   still perhaps a little bit thinking about it, and so I just

20   wanted to make sure that that was on the record that -- I mean,

21   look, we think it's too late, and I don't think they're going

22   to make that defense anyway.  But I just wanted to front that

23   for the Court as well.

24           THE COURT:  These lawyers, had they represented

25   Mr. Darden?

O9HJDAR1

1          MR. MEAD:  It's a bit complicated, your Honor.  One of

2     them is named Art Horne.  I understand -- and this is based on

3     the government's understanding and perhaps could be wrong.  I

4     understand that Mr. Horne represented Mr. Darden in an

5     unrelated previous matter and discussed representing Mr. Darden

6     in connection with this criminal case now, but did not do so.

7     That's my understanding.

8          Again, the defense may have some more information

9     about that.  The other attorney is Michelle Pamies.  It is my

10     understanding that the defendant and his co-conspirator hired

11     her in connection with the Atlanta Dream deal, but that her

12     client was technically Dwight Howard, the victim.  And that's

13     based on invoices that we submitted listing Mr. Howard as the

14     client.  We have not yet spoken to Ms. Pamies, and so it's a

15     little bit opaque to us.

16          Obviously, if there were to be some sort of advice of

17     counsel or presence of counsel defense, that is typically

18     raised weeks before trial, and there's many disclosures and

19     things to be made.  And I don't think the defense is going to

20     do that.  I just want to be clear about that.

21          THE COURT:  I think yes, if there was going to be

22     advice of counsel defense, I would have wanted to hear about

23     it.  But preliminarily, I mean, is there going to be a waiver?

24     In other words, if Ms. Pamies represented Mr. Howard, wouldn't

25     Mr. Howard have to waive his attorney-client privilege as well

O9HJDAR1

1    as whoever -- in other words, I don't know what the nature of

2    the testimony is, but if you're calling lawyers who represented

3    folks, they would have to waive their privilege depending on

4    the scope of the testimony.  And then wouldn't you be entitled

5    to get everything associated with that attorney-client

6    relationship?

7              MR. MEAD:  They're not our witnesses.

8              And another issue -- sorry.  Go ahead, your Honor.

9              THE COURT:  No.  No, finish your thought.

10             MR. MEAD:  Another somewhat related issue is we

11   haven't received any 26.2 material for any of the defense

12   witnesses, so we have no understanding of what the scope of

13   their anticipated testimony is.

14             THE COURT:  Okay.  All right.  Mr. Donaldson,

15   Mr. Ricco, in terms of the lawyers, I just need to know if it's

16   about or implicates the attorney-client relationship with

17   either Mr. Darden or Mr. Howard because there are a lot of

18   things I would have to -- well, first, is there going to be an

19   advice of counsel defense?

20             MR. RICCO:  If there were, your Honor, you would have

21   received notice of it.

22             THE COURT:  Okay.  That's a no?

23             MR. RICCO:  That's a no.

24             THE COURT:  Okay.  All right.  And second, is the

25   testimony going to implicate the attorney-client relationship?

O9HJDAR1

1    In other words --

2            MR. RICCO:  I understand.  The answer is no, as far as

3    we know, Judge.  Oftentimes individuals who are fact witnesses

4    have other titles like lawyers, psychiatrists, etc. etc., but

5    that doesn't mean that that's within the scope of their

6    testimony.  So these are fact witnesses.

7            THE COURT:  Okay.

8            MR. DONALDSON:  Potentially.

9            MR. RICCO:  Mr. Donaldson added the word "potential."

10           THE COURT:  Okay.  All right.

11           MR. RICCO:  And their names are on the list because

12   their names will be the subject of testimony whether or not

13   they testify or not.

14           THE COURT:  Sure.  I understand.  All right.

15           So I guess right now there's nothing to be done.  But

16   if it turns out you are going to, in fact, call those folks —

17   and you may not need to — I may ask you to give a proffer at

18   least to me of what their testimony would be.  It's one thing,

19   oh, I was present at a meeting and there were other people

20   there, as opposed to, yes, I was meeting with Mr. Darden and he

21   was telling me X, Y, and Z.  So I just want you to be prepared

22   that I may ask for that to happen.

23           MR. RICCO:  Yes, sir.

24           THE COURT:  Okay.  All right.  Thank you.

25           Anything else, Mr. Mead?

O9HJDAR1

1          MR. MEAD:  Somewhat relatedly, we haven't received

2     26.2 material for any witnesses.  We haven't gotten the exhibit

3     list yet.  I don't know if the defense has contemplated

4     exhibits.  I don't know if they have 26.2 material from any

5     interviews.  But if they do, we'd obviously like to get it on

6     the sooner side, your Honor.

7          THE COURT:  All right.  First, I guess, is there such

8     material and when would that material -- because I think,

9     Mr. Donaldson, I have a vague recollection that at the final

10    pretrial conference there was mention of certain documents, so

11    let me ask when -- and any 3500 equivalent.

12         MR. DONALDSON:  Your Honor, I think we talked about

13    defense exhibits, and I think the Court indicated that we

14    will -- well, I indicated and the Court agreed that we would

15    get those to the government as quickly as possible.  We just

16    don't have those put together yet as far as any 26 documents or

17    3500 documents.  We will also abide by our responsible

18    obligations to get those to the government as quickly as

19    possible.  If we have it, we will make sure they get them.

20         THE COURT:  I didn't catch the last part.

21         MR. DONALDSON:  If we have any documents related to

22    any witnesses that we will be calling, we will get those

23    documents over to the government as quickly as possible.

24         THE COURT:  So Mr. Mead, I will consider sort of a

25    deadline for that.  Obviously defense doesn't need to call any

O9HJDAR1

1    witnesses, and the government hasn't started its case, opened

2    or anything like that, so it may be at some point during the

3    government's case.  But what I want to avoid, Mr. Donaldson,

4    Mr. Ricco, is any delay because of that.  Okay.

5           Anything else, Mr. Mead?

6           MR. MEAD:  No, your Honor.  Thank you.

7           THE COURT:  Anything from the defense?

8           MR. DONALDSON:  No, your Honor.  Thank you.

9           THE COURT:  Okay.  All right.  So why don't folks take

10   a break because we're going to bring -- to use the restroom.

11   We're going to bring the panel over in ten minutes, okay?

12           MR. DONALDSON:  Very well.  Thank you.

13           THE COURT:  Thank you very much.

14           (Recess)

15           THE COURT:  So we're going to bring the jury over.

16   I've donned a mask because I have some sniffles.  And until I

17   confirm -- I don't think it's COVID, but I'm going to wear it

18   just in case and obviously during sidebars.  But I'm in the --

19   because all the COVID tests I have are expired, so I need to

20   get some up-to-date ones.

21           We're going to bring the prospective jurors over.  Is

22   there anything we need to take up before we bring them over?

23           MR. MEAD:  No, your Honor.

24           THE COURT:  Okay.  Let's go.

25           (Adjourned)