O9NBDAR1

 1  UNITED STATES DISTRICT COURT
    SOUTHERN DISTRICT OF NEW YORK
 2  ------------------------------x

 3  UNITED STATES OF AMERICA,

 4             v.                            23 Cr. 134 (VSB)

 5  CALVIN DARDEN, JR.,

 6                                           Trial
                  Defendant.
 7  ------------------------------x

 8
                                           New York, N.Y.
 9                                         September 23, 2024
                                           9:30 a.m.
10

11  Before:

12                    HON. VERNON S. BRODERICK,

13                                         District Judge
                                           -and Jury-
14                         APPEARANCES

15  DAMIAN WILLIAMS
         United States Attorney for the
16       Southern District of New York
    KEVIN MEAD
17  STEPHEN J. RITCHIN
    WILLIAM C. KINDER
18  BRANDON C. THOMPSON
         Assistant United States Attorneys
19
    DONALDSON CHILLIEST & MCDANIEL LLP
20  BY:  XAVIER R. DONALDSON
         -and-
21  ANTHONY RICCO
    STEVEN Z. LEGON
22  ERICA A. REED
         Attorneys for Defendant
23
    Also Present:
24  Alexander Ross, Paralegal
    Arjun Ahuja, Paralegal
25  Melissa Baccari, FBI Special Agent

O9NBDAR1

1          THE COURT:  Okay.  I apologize for the delay, both

2     ways.  So I am testing negative.  I will wear my mask during

3     the trial and when we're questioning the jurors, especially

4     when we're doing sidebar.  So the way I intend to proceed, all

5     of the jurors are going to be over across the way in 519.  The

6     55 plus the 30, whatever new folks.  Once we're done here, my

7     intention is to bring over the 55 or so who have been with us

8     already who had heard my initial comments, and several of whom

9     had already been questioned.  Once they're here, my initial

10     question for all of them, the full panel is -- and I was

11     planning on combining it, but I'll hear from the parties also,

12     whether or not any of the prospective jurors have done any

13     research or spoken substantively about the case.  And I'll just

14     ask them to raise their hands.

15          If they do, it wasn't my plan to engage in any

16     questioning, any back and forth.  My thought was that those

17     jurors would just be excused, but obviously I'll hear from the

18     parties.  I mean the two questions are slightly different, so

19     let me hear first from the government and then from the

20     defense.

21          MR. MEAD:  Your Honor, I think that approach makes

22     sense.  I think I would not say in advance that you're going to

23     dismiss any jurors on that basis because I think that would

24     encourage them.

25          THE COURT:  All I intend to do is ask those questions,

O9NBDAR1

1    ask them to raise their hands, and then basically ask them to

2    get up and say they're excused.

3            MR. MEAD:  That makes sense, your Honor.

4            MR. DONALDSON:  Just so I'm clear, so we're asking the

5    ones that were previously here whether they've done any

6    research related to this case?

7            THE COURT:  Correct, and substantive, any substantive

8    conversations relating to this case.

9            MR. DONALDSON:  Do we need to ask the question related

10   to Dancing with the Stars since it has been on?

11           THE COURT:  My view of that is that I don't --

12   although I'm going to tell them not to, if they have started

13   watching and not to watch it, what would be the prejudice if

14   they've watched Dancing With the Stars and seen a witness in

15   Dancing With the Stars?  Wouldn't it be the same as if someone

16   is just still playing professional basketball?  In other words,

17   I'm not sure I'm going to excuse any jurors; A, because I don't

18   believe I told them not to watch Dancing With the Stars; but,

19   B, that question is or that issue is slightly less -- well, I

20   don't see it as directly related to the case as the other two

21   questions.

22           MR. DONALDSON:  I respectfully disagree.  I think that

23   with media now, particularly social media, general media,

24   *et cetera*, the goal is to cast certain persons in certain

25   lights when they're on media or on social media.  So if he's

O9NBDAR1

| | |
|---|---|
| 1 | being marketed on Dancing With the Stars and even watching him |
| 2 | on Dancing With the Stars, then they may be getting some |
| 3 | information or different things about him that they wouldn't |
| 4 | otherwise know if it was a regular witness. |
| 5 | In most cases when we have jury selection or trials we |
| 6 | tell the jurors not to, of course do any research, but also not |
| 7 | to do anything about any particular witness, particularly |
| 8 | material witnesses.  So because of the nature of this case and |
| 9 | the nature of that witness and his personality, *et cetera,* I |
| 10 | would not want them looking at or watching anything related to |
| 11 | Dwight Howard because I believe that, as he's being marketed on |
| 12 | Dancing With the Stars, *et cetera*, they're trying to promote a |
| 13 | certain image that may not be the right image for entertainment |
| 14 | purposes.  And I believe that kind of promotion, marketing |
| 15 | *et cetera* may some how affect the jury related to his |
| 16 | testimony.  So I respectfully disagree with the Court, but I |
| 17 | think that should be discussed as well. |
| 18 | THE COURT:  Okay.  I'll hear from the government. |
| 19 | MR. MEAD:  Your Honor, this has already –– we agree |
| 20 | with the Court.  We don't think that needs to be a threshold |
| 21 | question here. It's already the question that the Court is |
| 22 | planning to ask in part two once the panel has been qualified. |
| 23 | I did not watch Dancing With the Stars.  It sounds like there |
| 24 | was nothing about this case.  If there was, I assume defense |
| 25 | would have said something.  And of course if defense wants to |

O9NBDAR1

1    strike anyone who watched the show, the Court will be able to

2    inquire about that later on.  We don't need to do it now as

3    this kind of very brief threshold exercise.

4          THE COURT:  All right.  As I mention, I don't think

5    that, quite frankly, I was in any way required to ask a

6    question about Dancing With the Stars.  The parties agree that

7    I should and I will, but I don't believe that it is a question

8    that preliminary -- I'm not going to ask the 55 that come back

9    whether or not they watched Dancing With the Stars initially,

10   but I will do so in due course as we've discussed and as are

11   part of the questions.  Yes.

12         MR. DONALDSON:  There's one other matter.  I sent a --

13   it may have been my confusion last Tuesday, but as I said via

14   email, my belief last Tuesday when we left was that the Court

15   had dismissed those jurors and that they were not to return.

16   Because of that, the government and I had conversations related

17   to a particular juror, Mr. Letterman, and we talked about my

18   son's interaction with Mr. Letterman.  We even talked about

19   whether or not either one of us would have picked him.  It's my

20   belief that those jurors have been discharged last Tuesday.

21         After court on Tuesday as I was walking away from the

22   building, Mr. Letterman was walking towards me.  I introduced

23   myself.  He recalled that he spoke to my son.  We shook hands

24   and then we left.  It was my understanding that he would not be

25   coming back today, but he is downstairs or he is in room 519.

O9NBDAR1

1    So just to put that on the record, he's here, and that was my

2    interaction with him last week.

3            THE COURT:  Okay.  Any objection having my deputy clerk

4    indicate to Mr. Letterman that he can head back across the

5    street?

6            MR. MEAD:  No objection, your Honor.

7            THE COURT:  All right.  We'll do that.  Obviously I

8    was unaware of any interaction with any members of the panel

9    until now.  I didn't know that your son had interacted with

10   Mr. Letterman.  Obviously it's a very unique situation, and I

11   wasn't planning -- and none of us were planning on these jurors

12   coming back.  It just by happenstance that we were able to do

13   that.  So we'll excuse Mr. Letterman from being a juror in this

14   case, and I'll do that at the outset before bringing the 55

15   folks over here.  Okay.

16           Let me ask, is there anything else?  I obviously have

17   to deal with the motion *in limine* and the most recent letter

18   from the defense, but let me hear from the government

19   concerning whether there's anything else that we need to

20   discuss before that?

21           MR. MEAD:  I think some brief things, your Honor.

22           THE COURT:  Yes.

23           MR. MEAD:  One, AUSA Thompson had a very brief

24   interaction with one of the jurors this morning I think not

25   recognizes that that person was a juror.  Maybe Mr. Thompson if

O9NBDAR1

1    you would just give 30 seconds on that.

2            MR. THOMPSON:  Your Honor, I was waiting for the

3    elevator to come to the courtroom and an individual who I

4    thought was a court reporter given that she had a headset asked

5    if this elevator went to five as she was looking for 519.  I

6    said any of these elevators does go to the fifth floor, and

7    then we rode the elevator together.  I think in that brief

8    exchange that was about 12 seconds she said she was looking for

9    Judge Broderick.

10           THE COURT:  Okay.  All right.  Yes.

11           MR. MEAD:  On the voir dire.  Right before lunch last

12   week we pointed out to the Court that I think Docusign the

13   company was not listed on the voir dire sheets, and perhaps the

14   Court could orally add it when it ask the question.

15           THE COURT:  I will do so.  And with regard to the

16   interaction, I'll hear from the defense in a moment, but go

17   ahead.  So Docusign.  Yes.  Mr. Mead.

18           MR. MEAD:  The sealed motion is still pending as the

19   Court mentioned.  I think that has some interaction with the

20   defendant's request for voir dire this morning of course.  I

21   don't know if the Court wants to take that up now.

22           THE COURT:  Why don't we talk about the additional

23   voir dire, and then we could more fend to the next issue.  Yes.

24           MR. DONALDSON:  Your Honor, you pointed us to respond

25   to their interaction.  We don't have a or see a problem with

O9NBDAR1

1 that interaction.  And just for the clarity and for equity, I

2 guess I was standing out in the hallway this morning listening

3 to my earphones, and I don't know maybe eight or nine people

4 asked me where room 519 was, and so I pointed to that area.  So

5 thank you, sir, for telling us that.

6     THE COURT:  Thank you.  With regard to both

7 interactions, I agree that nothing needs to be done with regard

8 to that.  All right.  With regard to the letter that was sent

9 earlier today with regard to the additional voir dire questions

10 I think related to aiding and abetting.  And the one that's

11 related to the sealed motion, let me ask the defense is there

12 anything else that you would want to add to that isn't in the

13 letter that you submitted?

14     MR. DONALDSON:  You're speaking about the one this

15 morning?

16     THE COURT:  Yes.

17     MR. DONALDSON:  No, nothing more to that one.

18     THE COURT:  Let me hear from the government with

19 regard to that.

20     MR. MEAD:  As to the first voir dire request aiding

21 and abetting liability, the government's not planning to

22 introduce the judgment against Mr. Briscoe. I'm not sure if the

23 defense is.  If the defense is, I think we'd like a proffer of

24 relevance.  We still haven't gotten an exhibit list from the

25 defense, so this is all news to us.  If that document were to

O9NBDAR1

1    come in, I think we generally don't object to something like

2    this in the voir dire.

3            THE COURT:  All right.  What I'll say with regard to

4    that is that the issue of aiding and abetting, to the extent

5    it's relevant, will be something that I can discuss with the

6    jury in the request to charge.  It's not clear to me --

7    again -- well, let me ask, Mr. Donaldson, does the defense

8    intend to offer Mr. Briscoe's guilty plea or something like

9    that?  And if so, what is the relevance of that?

10            MR. RICCO:  Judge, I'll respond.

11            THE COURT:  Yes, Mr. Ricco.

12            MR. RICCO:  Your Honor, the issue of his conviction is

13    not just limited to the entry of a judgment, he's on the

14    various witnesses list.  Well, he's on the defense witness

15    list, or he will be if he's not.  So there's a possibility that

16    he may testify in this case, and so --

17            THE COURT:  Have you spoken with his lawyer?

18            MR. RICCO:  The defense has spoken with --

19            THE COURT:  Did I sentence Mr. Briscoe?  I just don't

20    remember.

21            MR. RICCO:  Yes, according to the docket sheet anyway.

22    So anyway, Judge, it's for precautionary reasons.  I think the

23    more critical issue is if and when he comes in there's some

24    type of curative instruction.  That's the most important part.

25            THE COURT:  I think, again, it's premature.  Number

O9NBDAR1

1    one, I do have a witness list.  He's not yet on that list.  I

2    understand he's going to be on that list.  I think that if he

3    does end up testifying, that's a separate issue.  And I think

4    obviously the aiding and abetting liability and the issue of

5    his guilty plea we can talk about and at that time.  But as

6    things stand right now, I don't intend to ask the jury or

7    provide them with an instruction with regard to aiding and

8    abetting at this juncture.  Okay.

9            Is there anything else that the parties wish to add to

10   the arguments?  Understanding the nature of the filings that

11   both parties put in, is there anything the parties would like

12   to add with regard to the motion *in limine* that remains

13   outstanding with regard to athlete-one, excuse me athlete-two?

14           MR. MEAD:  The only things I'll say, your Honor, is we

15   submitted a letter to the Court on Saturday night with an

16   updated set of exhibits.  I think the law was incredibly clear

17   that we should -- the exhibit shouldn't be -- you know -- the

18   text we're trying to -- shouldn't come in even before we

19   submitted that letter.  I think given the dramatically narrowed

20   scope of the messages we are planning to introduce, almost all

21   of the statements by athlete-two are for questions that we're

22   planning to introduce.  And we're open to a limiting

23   instruction that they're not being offered for their truth.  I

24   think this is -- there's clear Second Circuit law saying that

25   messages we're trying to preclude don't come in.  And I think

O9NBDAR1

1   it would turn the trial into a bit of a circus if they were to

2   come in.  I'm happy to answer any other questions from the

3   Court, otherwise we'll rest on our submission.

4            THE COURT:  Mr. Donaldson.

5            MR. DONALDSON:  Judge, notwithstanding the

6   government's second letter related to this particular

7   witness's -- I'm going to call them communications.  And it

8   doesn't matter in my opinion whether or not they are questions,

9   statements, abbreviations, anecdotes.  It doesn't matter.  In

10  my humble opinion as the government said, the Second Circuit is

11  crystal clear related to persons who have, quote, unquote,

12  would be testifying that have extreme views on race, and in

13  this particular case this witness has extreme -- and I'm saying

14  super extreme views.  Let me take it back.  This witness has

15  indicated that he is a devout racist in my opinion.  He has

16  indicated that by his text messages --

17           THE COURT:  Could you do me a favor.  The filings have

18  been made.

19           MR. DONALDSON:  Sorry, Judge.  Pardon me.  In my

20  opinion the witness has indicated certain views.  We would --

21  it's our belief that those views are of a nature that require

22  the responses that I put in my motion *in limine*.  I think that

23  notwithstanding the limited nature of the government's letter

24  realistically -- and I think that's what I'm basing this on,

25  realistically the jury will have to put some type of

O9NBDAR1

1  credibility, some type of emphasis, some type of something on

2  those statements, those questions.  Inside the questions, the

3  context of those questions do specifically relate to material

4  issues in this case.  The answers to those questions -- and

5  likely, if I can go a step forward, like we say generally,

6  questions and answers is what is evidence, so.

7          THE COURT:  The answer is evidence.

8          MR. DONALDSON:  The answer is evidence.  So in this

9  particular situation if the witness is asked a question and

10  there's an answer given, then I imagine the government's going

11  to use that answer as part of the evidence to accomplish a

12  particular goal that they're seeking.  In my opinion it's a

13  sandwich now.  One, the answer not relevant without the

14  question, which means the jurors are going to have to put some,

15  in my opinion, some weight on the question and where the

16  question came from.  Just because of the nature of the

17  information contained in my motion *in limine* -- forgive me for

18  my initial statements.

19          THE COURT:  It's okay.

20          MR. DONALDSON:  I firmly believe that the jury should

21  be allowed to hear the contents of my motion *in limine* to

22  properly judge the nature of the question and answer that were

23  equal evidence that they will be asked to decide whether it's

24  credible.  And again, just my experience in doing several of

25  these fraud cases in this district and other districts, I am

O9NBDAR1

1    confident that at the end of this case the prosecutor is going

2    to do what they do well, which is try to add things up, this

3    plus this equals that.  This person said this equals that.  We

4    know this happened, this happened, so this must be what it is.

5    That's going to happen, which means they're going to use those

6    text messages to do that and to satisfy their requirement for

7    meeting certain elements.  That means they're going to be

8    asking the jury to, again, come to some kind of decision

9    related to those questions and those answers.  So with that

10   I'll rely on my record and my papers, but I want to make sure I

11   reinforce that.

12          THE COURT:  Okay.

13          MR. DONALDSON:  Once again I'm sorry for the first

14   part.

15          THE COURT:  That's okay. Anything else from the

16   government?

17          MR. MEAD:  Not unless the Court has questions, your

18   Honor.

19          THE COURT:  Now I'll address the government's

20   outstanding motions *in limine*.  First, the government filed a

21   motion on September 5, 2024, to preclude cross-examination of

22   athlete-three and athlete-three's mother regarding

23   athlete-three's 2019 NCAA suspension, as well as any other

24   evidence regarding that suspension and the circumstances that

25   led to that suspension.

O9NBDAR1

1         Second, the government filed a sealed motion on

2    September 12, 2024, to preclude defendant from introducing

3    certain text messages sent and received by athlete-one, a

4    victim in this case who the government does not intend to call

5    to testify.  I think I misspoke.  I think the outstanding

6    motion is athlete-one.  I apologize, a victim in this case who

7    the government does not intend to call to testify.  Third, the

8    government filed a sealed motion on September 16 to preclude

9    cross-examination of or to the introduction of evidence

10   regarding certain categories of evidence regarding athlete-two,

11   another victim in this case.

12        By letter dated September 21, defendant informed me

13   that he is not objecting to the government's September 5th or

14   September 16th motions *in limine*; therefore, those motions are

15   granted as moot, and defendant is precluded from

16   cross-examining athlete-three and athlete-three's mother

17   regarding the matters identified in the government's September

18   5th letter, and athlete-two about the matters identified in the

19   government's September 16th letter.  In its September 12, 2024

20   motion *in limine*, the government argues that since it does not

21   intend to call athlete-one, I should exclude certain text

22   messages sent and received by athlete-one.  In addition, the

23   government indicates that it intends to introduce text messages

24   between athlete-one and Charles Briscoe, a co-conspirator, but

25   that it does not intend to introduce any of athlete-one's

O9NBDAR1

out-of-court statements for their truth; and that it consents

to a limiting instruction making clear that none of

athlete-one's statements are being admitted for their truth.

The government filed its -- excuse me.  The defendant

filed its opposition on September 18, 2024, and the government

filed its reply on September 19.  By sealed letter dated

September 21, the government provided me with the exhibits it

intends to offer at trial which consist of five text chains

between athlete-one and Briscoe, two of which only include text

messages sent from Briscoe to athlete-one.

Defendant opposes the government's motion on two

grounds.  First, defendant argues that "it does not matter that

athlete-one is now not testifying, and as such not subject to

cross-examination" because "the government is still attempting

to use the words of an individual that undeniably harbors bias

to assist in convicting defendant; and therefore, he should be

able to impeach athlete-one with his prior text messages."

Second, defendant argues that Rule 106 of the Federal Rules of

Evidence requires the admission of the text messages in order

to establish the "full context of possible bias" of

athlete-one.  Having considered the parties' submission and the

universe of text messages sent by athlete-one the government

intends to admit at trial, I find that the text messages that

are the subject of the motion *in limine* have no probative

value, and are thus inadmissible under Federal Rule of Evidence

O9NBDAR1

1    402.  Therefore, the government's motion to preclude those text

2    messages is granted.

3            With regard to impeachment of a non-testifying

4    witness.  As an initial matter I find that if athlete-one does

5    not testify, and if none of his statements are admitted for the

6    truth of the matter asserted, then those statements are not

7    hearsay, and defendant will not be permitted to impeach

8    athlete-one's credibility.  Federal Rule of Evidence 806

9    establishes the basis on which a non-testifying witness may be

10   impeached.  Under that rule "when a hearsay statement has been

11   admitted in evidence, the credibility of the declarant may be

12   attached by any evidence which would be admissible for those

13   purposes if the declarant had testified as a witness.  The

14   advisory committee note explain that "the declarant of a

15   hearsay statement which is admitted in evidence is in effect a

16   witness" and that therefore "his credibility should in fairness

17   be subject to impeachment as though he had in fact testified."

18           Here, defendant argues that it "does not matter that

19   athlete-one is now not testifying, and as such not subject to

20   cross examination" because the jury must be informed of

21   athlete-one's bias text to assess the "weight or veracity of

22   the statements and for completeness." This argument is contrary

23   to law and ignores the fact that because none of athlete-one's

24   statements are being offered for their truth, his credibility

25   is not at issue.  Thus, the jury need not consider the veracity

O9NBDAR1

of any of athlete-one's statements since they are not being

admitted for their truth, and any impeachment evidence is not

admissible.  And I'm citing *United States v. Menendez* there,

2024 WL 2867107 at 1, and also cite which cites *United States

v. Paulino*, 445 F.3d 2011 at 2017.

        The fact that athlete-one is a victim, and therefore a

"critical" witness does not alter my analysis or render the

text message at issue admissible.  As the Second Circuit has

"previously made clear that a district court need not allow

impeachment even of a central figure whose

out-of-court-statement were not admitted for their truth."

Citing *United States v. Reagan* there, 103 F.3d 1072 at 1083.

In addition, defendant also argues that "the government is

attempting to use athlete-one's text messages for their truth

and disguising it as context." Assuming the text messages sent

by athlete-one would serve as critical evidence if the

government were to ignore -- excuse me, if the jury were to

ignore my instruction and consider such statements not as

context for Briscoe's text messages, but rather for their

truth, then perhaps there might be some marginal probative

value to athlete-one's credibility.

        However, defendant has failed to highlight even a

single text message raising this concern.  Instead, defendant

highlights two exchanges between athlete-one and Briscoe that

it contends are "good examples" of the government's purported

1    attempt to introduce athlete-one's statement for their truth.

2    These exchanges, however, one of which the government no longer

3    seeks to admit, do not illustrate or support defendant's

4    argument.  Each of the four purportedly hearsay statement by

5    athlete-one are questions, not affirmative statement.  The law

6    is clear that questions are not assertions, and I'm citing

7    *United States v. Coplan*, 703 F.3d 46 at 84, as well as

8    *Headley v. Tilghman,* 53 F.3d 472 at 476.  Defendant failed to

9    explain why athlete-one's questions are affirmative statements,

10   or how his questions contain facts.  Thus, I do not credit

11   defendant's argument that these exchanges reflect athlete-one

12   "identifying people and discussing alleged facts related to

13   material issues."  Let alone defendant's suggestion that the

14   government is "disguising" athlete-one's statement as context

15   in an attempt to invite the jury to consider the text for their

16   truth.

17           To the contrary, athlete-one's non-hearsay questions

18   involve precisely the intended use proffered by the government

19   context for Briscoe's statement, which are factual assertions

20   that are admissible for their truth as co-conspirator

21   statement.  Indeed of the ten statements that the government

22   seeks to admit, seven are questions, and three are statements

23   that are plainly not being admitted for their truth.  Thus,

24   because defendant fails to support this argument that

25   athlete-one's statements are factual assertions that are being

O9NBDAR1

1    offered for their truth, athlete-one's credibility is not at

2    issue.  Rule 806 does not apply, and defendant will not be

3    permitted to impeach athlete-one on this basis.  With regard to

4    the Rule of Completeness under Rule 106.  Defendant also argues

5    that if the government is permitted to introduce text messages

6    between athlete-one and Briscoe, the admission of which

7    defendant has not objected to, that the text messages that are

8    the subject of the government's motion *in limine* should be

9    admitted pursuant to Rule of Completeness under Federal Rule of

10   Evidence 106.

11            This argument is similarly unavailing.  Under the Rule

12   of Completeness "if a party introduces all or part of a writing

13   or recorded statement, an adverse party may require the

14   introduction at that time of any other part or any other

15   writing or recorded statement that in fairness ought to be

16   considered at the same time." I'm citing there Rule 106.  The

17   Second Circuit has interpreted the doctrine of completeness to

18   "require that a statement be admitted in its entirety when this

19   is necessary to explain the admitted portion, to place it in

20   context, or to avoid misleading the trier of fact, or to ensure

21   a fair and impartial understanding of the admitted portion."

22   I'm citing *United States v. Marin*, 669 F.2d 73 at 84.  This is

23   true "even though a statement may be hearsay." And I'm citing

24   *Coplan*, 703 F.3d 46 at 85.

25            Defendant does not identify nor have I located any

O9NBDAR1

case in which a court permitted impeachment material of a

non-testifying witness under any rule, let alone Rule 106.  Nor

has the defendant cited any case law where a court has allowed

the introduction of entirely separate statements on a different

subject matter to provide context to an admitted statement.  I

decline to do so here.  In addition, Rule 106 "does not render

admissible evidence that is otherwise inadmissible."  I'm

citing *United States v. Elmanni*, 2023 WL 2770242 at 7.  Nor

does Rule 106 "compel admission of otherwise inadmissible

hearsay evidence."  I'm citing *United States v. Gotti*,

457 F. Supp.  2d 395 at 3697 or function as "a mechanism to bye

pass hearsay rules of any self-serving testimony" and I'm

citing *United States V. Gonzalez*, 399 F. App. 641 at 645.

          Here, of course, defendant does not intend to

introduce self-serving testimony, but the same general

principle applies.  Defendant may not use the rule to introduce

evidence that is advantageous though otherwise admissible

hearsay.  To be clear, the fact of the text messages are

hearsay is not sufficient to defeat defendant's Rule 106.  As

the Second Circuit recently explained "when the omitted portion

of a statement is properly introduced to correct a misleading

impression or place in context that portion already admitted,

it is for this very reason admissible for a valid non-hearsay

purpose to explain and ensure the fair understanding of the

evidence that has been already introduced."  And I'm citing

O9NBDAR1

1   *United States v. Williams*, 930 F.3d 44 at 60.  However, as

2   *Williams* also clarified, and as defendant himself acknowledges

3   in citing *Williams*, the completeness doctrine "has never

4   required the admission of portions of a statement that are

5   neither explanatory of nor relevant to the admitted passages."

6   Defendant has not proffered any reason why the text messages

7   are relevant to explain or correct a misleading impression

8   regarding the text messages sent and received by athlete-one

9   that the government seeks to admit.

10          Lastly, defendant argues that given athlete-one clear

11  bias it is "reasonable that athlete-one might have distorted or

12  fabricated his words against defendant."  It is worth noting,

13  however, that it appears that athlete-one did not know relevant

14  details about the defendant at the time many of the text

15  messages were sent and/or received.  And defendant has not

16  provided any evidence otherwise.  In addition, defendant does

17  not identify any facts or words he believes were "distorted or

18  fabricated" in the text messages the government seeks to admit.

19  Therefore, the text messages that are the subject of the motion

20  *in limine* are not admissible pursuant to Rule 106.

21          Now, the issue about what those text messages

22  concerned and the severity of the bias, I need not address, and

23  they don't impact my decision here as the law is clear.

24  Accordingly, the government's motion is granted.  Okay.  Any

25  questions from the government?

O9NBDAR1

1          MR. MEAD:  The accidental reference by defense

2     counsel, we'd asked that that either be stricken from the

3     transcript or sealed, whatever is most convenient.

4          MR. DONALDSON:  I would ask that it be stricken.  I

5     agree.

6          THE COURT:  Okay.

7          MR. DONALDSON:  I was going to ask that it either be

8     stricken or sealed, whatever is easier for the reporter or the

9     Court.

10          THE COURT:  All right.  What may need to happen though

11     is the parties, I don't think the court reporter is in a

12     position to figure out what statement should be stricken.  I

13     have no objection to the statements being stricken. In fact,

14     the defense is in agreement, so I just ask the parties when you

15     get the draft of the transcript, please communicate with the

16     court reporter to make sure that those statements are stricken.

17     Yes, Mr. Donaldson.

18          MR. DONALDSON:  One last thing.  I'm going to hand the

19     government a subpoena for Mr. Parsons.

20          THE COURT:  Well, let me ask.  It's not clear to me.

21     Is it your belief, Mr. Donaldson, that Mr. Parsons is under the

22     government's control?

23          MR. DONALDSON:  It's my belief that the government has

24     been in contact with Mr. Parsons.  The short answer to that

25     question is yes.  The long answer to that question is my belief

O9NBDAR1

1    is that Mr. Parsons not in New York City.  The government has

2    been in contact with Mr. Parsons over the last three weeks

3    either it's been in person and/or via phone and/or via video.

4    I think it's a professional courtesy, as we always do and

5    always and sometimes provide the government with a subpoena for

6    a witness that they had initially were going to call that we're

7    now letting them know that we'd like to call, consider calling.

8               THE COURT:  I understand Mr. Parsons is represented

9    is.  That correct, Mr. Mead.

10              MR. MEAD:  It is, your Honor.

11              THE COURT:  All right.  So Mr. Mead can provide the

12   subpoena to the attorney, and we will see what happens

13   thereafter.  I'm not sure that -- it's not clear to me that

14   quite frankly, Mr. Donaldson, that the witness is under the

15   control of the government.  It's not a government witness.

16   It's someone, yes, who's a victim.  If you can cite me case law

17   that a victim is in fact under the control of the government

18   such that the government is otherwise -- well, so it's not

19   clear to me that that is in fact the case.  So the government

20   can provide -- have you been in contact with the lawyer?

21              MR. DONALDSON:  Judge, no, honestly.  This is, as the

22   Court can see, this is involving a rather fluid situation.

23   This is no difference from the government providing us a

24   subpoena for someone that they thought we were, whatever.  And

25   so I think it's appropriate that as a professional courtesy we

O9NBDAR1

1    provide them with a subpoena and ask them to give it to

2    Mr. Parsons' attorney.  They can give me Mr. Parsons'

3    attorney's information, and I'll do the same thing.  But the

4    goal is to make sure he gets this and that we can try to get

5    him.  That's the goal. The goal is to make sure he gets it and

6    we can get him here. They want to say he's not under their

7    control, that's their position.

8           THE COURT:  It's not a question of position.  All

9    right. It's a question of law.  So it is their position.  And

10   that's all I was saying is, it's not clear to me that he's

11   under their control.  No one has cited me any case law with

12   regard to that.  Now with regard to any expected testimony that

13   Mr. Parsons may give, I may require some proffer as to that

14   because we're not necessarily going to call him.  And he won't

15   necessarily be a witness merely to elicit the bias which I have

16   just excluded.

17          MR. DONALDSON:  I will not do that, Judge.

18          THE COURT:  All right.

19          MR. DONALDSON:  I will not do that, Judge.

20          THE COURT:  Okay.  But, well, all right.  Yes,

21   Mr. Mead.

22          MR. MEAD:  So our position is he's not under our

23   control.  I will happily provide defense counsel with the

24   contact information for the attorney.  I will certainly do

25   that, but I don't think the subpoena is binding on us in any

O9NBDAR1

| | |
|---|---|
| 1 | way.  I share the concerns just raised by the Court.  I think |
| 2 | there may need to be briefing on that subject.  It seems |
| 3 | relatively significant to the government.  I don't think we |
| 4 | necessarily need to deal with that today of course.  This is |
| 5 | the second reference just this morning to kind of new defense |
| 6 | witnesses.  There's a reference to Mr. Briscoe.  There's a |
| 7 | reference to Mr. Parsons.  They haven't been on the defense |
| 8 | witness list.  We still haven't gotten any 26.2 material. |
| 9 | We've learned that the judgment for Mr. Briscoe might be coming |
| 10 | in based on a voir dire question.  We'd ask again that the |
| 11 | Court direct the defense to provide us an updated witness list, |
| 12 | 26.2 material and an exhibit list, some sort of very soon |
| 13 | deadline, your Honor. |
| 14 | THE COURT:  Okay. |
| 15 | MR. RICCO:  Your Honor, we have no objection to the |
| 16 | Court suggesting that to us.  This is a defense.  The defense |
| 17 | is fluid.  The government hasn't put one witness on the witness |
| 18 | stand yet, and we're doing the best we can to comply with |
| 19 | fairness. |
| 20 | THE COURT:  Let's get the trial underway and I'll take |
| 21 | an assessment concerning that.  With regard to witnesses. |
| 22 | Obviously the ruling on Mr. Parsons was just today; however, it |
| 23 | clearly was anticipated that the defense wanted him as a |
| 24 | witness, and thus a subpoena was provided to the government |
| 25 | today.  So I understand that the defense is doing as best they |

O9NBDAR1

1    can, but what I would say is that as soon as -- I'm not exactly

2    sure what happened with Mr. Briscoe, but let me ask.  Are there

3    any additional witnesses other than the witnesses that have

4    been discussed, the three, Mr. Briscoe and now Mr. Parsons that

5    the defense intends to call in its case?  Yes.

6         MR. DONALDSON:  Judge, we're not in a position to say

7    that we are not.  We're trying to be as fair as we can.  We

8    provided the witnesses that we've thought about at that time.

9    As I said, this is a fluid situation.  The last one regarding

10   the last witness was related to what just happen.  So as we --

11   something comes up, then I will immediately tell the

12   government.  I think Mr. Mead will agree that I've been trying

13   to as fair as possible.  If something comes up, I'll tell him

14   quickly.

15        THE COURT:  Sure.  I guess what I would say then with

16   regard to the witnesses currently that have been identified,

17   particularly Mr. Briscoe, if there are documents like whether

18   it's a plea allocution, his guilty plea, whatever it may be

19   that the defense intends to introduce, I would ask that you

20   provide notice to the government by the close of business

21   tomorrow with regard to Mr. Briscoe.  I mean, in other words,

22   there are certain documents -- there may be certain documents

23   you're not sure about; but with regard to any documents

24   relating to his guilty plea, his sentencing, whatever, whatever

25   you intend to use with him, I'd ask that you provide the

O9NBDAR1

1  government with that information.

2          MR. DONALDSON:  Certainly, Judge.  Absolutely.

3          THE COURT:  Okay.  All right.  Let me ask, is there

4  anything else that we need to deal with, cause the next thing I

5  was planning on doing is Ms. Disla would go across the way, let

6  Mr. Letterman know that he is excused and bring however many of

7  the 55 folks over here.  In a moment I'll check to see whether

8  we can position them where they were when we were doing jury

9  selection in 110.

10          MR. DONALDSON:  That was the question we had this

11 morning with the government whether or not we were going to try

12 to have those same two, three, in the same places.

13          THE COURT:  That would be my intent, but I have to

14 check with my staff to see if that's possible.  We can take a

15 break.  Yes, Mr. Mead.

16          MR. MEAD:  Just a couple of quick things.  One is,

17 it's my understanding that the Court is not going to read the

18 second proposed voir dire question based on the Court's ruling

19 on the sealed motion *in limine*?

20          THE COURT:  That's correct, yes.  Sorry.

21          MR. MEAD:  Not a problem.  Your Honor, we previously

22 discussed a protective order that there's going to be a lot of

23 PII that is necessary to distinguish the defendant from his

24 father in this case.  There's a protective order that's been

25 agreed upon between the parties.  So if the press asked for

O9NBDAR1

1    exhibits, some of that PII will be redacted.  We can hand that

2    up to the Court's deputy law clerk.

3              THE COURT:  Okay.  And is this something -- the

4    parties are in agreement.  I will sign and it will be placed on

5    the docket.

6              MR. DONALDSON:  Yes.

7              THE COURT:  Thank you.

8              MR. MEAD:  And then finally just for the Court's

9    reference, there are a substantial number of documents that we

10   intend to move into evidence tomorrow at some point.  We have

11   submitted that list of documents of exhibits to the defense by

12   email last night.  It is our hope of course that the defense

13   will let us know any objections to any of those exhibits so

14   that we don't get bogged down tomorrow when we're trying to

15   introduce them.

16             THE COURT:  Okay.  I'm not sure they're going to be

17   any objections, but if I could just get a copy of whatever the

18   list of those documents are.  Yes, Mr. Donaldson.

19             MR. DONALDSON:  I'm sorry.  I forgot what I was

20   responding to.

21             THE COURT:  Mention of exhibits.

22             MR. DONALDSON:  You don't know whether there was going

23   to be an objection to those.  We did receive that email, the

24   email was sent this morning about 1:00, so actually I didn't

25   see it until just now.  And there are maybe three or four dozen

O9NBDAR1

1    exhibits here, so I don't know right now whether we will be

2    objecting to any.  We will get back to the Court and the

3    government as quick as possible.

4            THE COURT:  All right.  Thank you.  Unfortunately I

5    was just informed that we're not going -- because some of our

6    jurors actually went and were picked by Judge Rochon in

7    connection with another trial and some of them are not here.

8    We are not going to be able to reconstitute what we had done.

9    We'll call jurors.  We'll put them in the box.  We'll put them

10   in the first couple of rows.  I basically -- I'll do the two

11   questions initially when they come in, excuse those jurors and

12   then we'll start putting people in the box.  And I will start

13   with the voir dire of juror number one.  Yes, Mr. Mead.

14           MR. MEAD:  Does the Court want the email we sent the

15   defense?

16           THE COURT:  Sure.  That would be great.

17           MR. DONALDSON:  So the 32 that I have here, we can

18   just get rid of those.  We are going to start over?

19           THE COURT:  Correct.

20           MR. MEAD:  So the record is clear, I just handed over

21   an email from me from September 23 at approximately 1:18 a.m.

22           THE COURT:  Okay. I'm heartened that everybody is

23   working to wee in hours in the morning.  Nothing wrong with a

24   little hard work and elbow grease, although you should also get

25   your sleep.  Okay.  Thank you.

O9NBDAR1

1          Any objection to Ms. Disla going across the way

2     indicating to Mr. Letterman that he is excused and bringing

3     however many folks over here who already heard my initial

4     comments over here, and then we'll begin with those folks and

5     see how many hopefully the jurors we can get out of that?

6     Anything we need to do before we do that?

7               MR. DONALDSON:  No.  Thank you.

8               MR. MEAD:  No objection, your Honor.

9               THE COURT:  Okay.  If we can take a quick break.  Why

10    don't we come back by 10:30 cause I want everybody here as we

11    bring everybody in.  Okay.  Thank you.  We'll stand adjourned.

12               (Adjourned to September 24, 2024 at 9:00 a.m.)

13

14

15

16

17

18

19

20

21

22

23

24

25