**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------X
                                                     :
**UNITED STATES OF AMERICA,**          :          **23 CR 134  (VSB)**
                                                     :
                        **-v-**                       :
                                                     :
**CALVIN DARDEN**                             :
                                                     :
                **Defendant.**                 :
-------------------------------------------------------X

## SENTENCING MEMORANDUM

Submitted by:
Xavier R. Donaldson
Attorney for Calvin Darden
136 E. Madison Avenue
6th Floor
xdonaldson@aol.com

**Xavier R. Donaldson**
**Attorney at Law**
**136 E. Madison Avenue, 6th Floor**
**New York, NY 10016**
**646-722-3334**
**Xdonaldson@aol.com**

January 15, 2025

<u>**VIA ECF and Email**</u>
Honorable Vernon S. Broderick
United States District Court Judge
Southern District of New York
40 Foley Square
New York, New York 10007

      Re:    *United States v. Calvin Darden*
               23 Cr 134 (VSB)

Dear Judge Broderick:

      This Sentencing Recommendation is submitted pursuant to Rule 32 (f)(1) and (2) of the Federal Rules of Criminal Procedure, which sets forth Calvin Dardin Jr.'s objections to the Presentence Investigation Report and his Sentencing Recommendation. For the reasons set forth below, Calvin Darden, Jr. requests that the court impose a sentence of 108 months, as suggested by the Judiciary Sentencing Information (JSIN) and the court's authority under 18 U.S.C.§ 3553(a), 18 U.S.C. §3661,  and *United States v. Booker*, 534 U.S. 220 (2005).[1]

---

[1]      The Judiciary Sentencing Information (JSIN) platform is an online sentencing data resource specifically developed by the United States Sentencing Commission to assist the judiciary with access to sentencing data for similarly situated defendants.  The Sentencing Commission recommends that should the court consider the sentencing data provided by JSIN as part of its consideration of the factors in 18 U.S.C. § 3553(a), it should only do so after the guideline range has been calculated.  See, Presentence Investigation Report (PSR), E.C.F. No. 238, page 26. See, https://www.ussc.gov/guidelines/judiciary-sentencing-information

**OBJECTIONS TO PSR**

Paragraph 54: We object to applying USSG § 2B1.1(b)(10)(C), the "Sophisticated Means" enhancement. Specifically, we do not believe that the offenses of conviction were "especially complex or especially intricate" in their execution or in the concealment of the alleged offenses. *See*, *United States Sentencing Guidelines,* 2B1.1, app. Note 9(B).

**ANALYSIS OF 18 U.S.C. 3553 FACTORS**

18 U.S.C. Section 3553 calls upon this Court to consider specific factors, including the appropriate Sentencing Range, to impose a sentence on a defendant that is "sufficient but not greater than necessary" to comply with the goals of sentencing. *See, 18 U.S.C. Section 3553(a).* Indeed, any sentence imposed by the Court must be based upon an individualized assessment based upon the unique factors presented. *See*, *U.S. v. Gall*, 552 US 38, 39 (2007).

Significantly, the United States Sentencing Guidelines merely reflect a "rough approximation of sentences that might achieve section 3553(a)'s objectives". *See*, *Rita v. United States* 551 US 338, 350 (2007). The Court "may not assume that the Guidelines Range is reasonable." *Gall*, at 50. As the Supreme Court declared in *Nelson v. United States*, 550 U.S. 350 (2009), "[t]he Guidelines are not only *not mandatory* on sentencing courts; they are also not to be *presumed* reasonable." *Id.*, at 351 (emphasis in original).

After giving both parties an opportunity to argue for whatever sentence they deem appropriate, the District Court should then consider all of the 3553(a) factors to determine whether they support the sentence requested by a party". *U.S. v. Gall*, at 49-50. It is our opinion that after considering all the factors articulated in 18 U.S.C. 3553, **this Court should sentence Calvin Dardin Jr. to a downward variance not to exceed 108 months, which we believe is "sufficient but not greater than necessary" to punish Calvin Dardin Jr. for his participation in this crime.**

<u>***Nature and circumstances of the offense***</u>

On October 4, 2024, Calvin Dardin, Jr. was found guilty, after trial, of Counts 1 – 5 charging him with violating 18 U.S.C. § 1343, 18 U.S.C. §1344, 18 U.S.C. § 1349, and 18 U.S.C. § 1956 (Money Laundering).

According to the charges of conviction, Calvin Dardin, Jr., working with Charles Briscoe, used fraudulent means including the wires, and received over one million ($1,000,000.00) dollars from Athlete 1, and over seven million ($7,000,000.00) from Athlete 2. Thereafter, the charges of conviction relate to Calvin Dardin, Jr. utilizing federal banking institutions to disguise the origins of the monies he received from Athletes 1 and 2.

*__Personal Characteristics__*

Calvin Dardin, Jr. was born in Buffalo, New York on July 21, 1974, to Patricia Darden and Calvin Darden Sr.  His mother and father both currently reside in Atlanta, Georgia.  His mother, Patricia, is a retired nurse.  His father, Calvin Sr., is a retired business executive having formerly served as Chief Operating Officer of the United Parcel Service (UPS).  Thereafter, his father served on several corporate boards, but had to retire due to significant medical issues, including dementia, cancer and several other physical ailments.

Calvin Dardin, Jr. has two (2) siblings: Tami Hudson (49) and Lorielle Paulk (43). Ms. Hudson resides in Charlotte, North Carolina and is currently employed as a cyber security officer for Wells Fargo.  Ms. Paulk resides in Marietta, Georgia and is currently employed in the marketing field.

Immediately after graduating from high school in 1992, Calvin Darden, Jr. earned an acceptance to attend the prestigious Morehouse College in Atlanta, Georgia.  Like many young men that begin Morehouse College, Calvin Dardin, Jr. was excited and ready to take on the world.  Calvin Dardin, Jr. attended Morehouse College from 1992 – 1996 majoring in finance.  After four (4) years at Morehouse College, Calvin Darden, Jr. left without graduating and began employment.

Over the next few years, Calvin Darden, Jr. acquired a Series 7 license, a general securities representative license, the Series 63 certification, and a state level securities license. While his family was growing, Calvin Darden, Jr. acquired employment for his father and as Head of Business Development for OIA Brands. Before his arrest in this matter, Calvin Darden, Jr. and his family were attempting to start a production company to produce music videos, television shows and possibly movies.

Calvin Darden, Jr. has three (3) children:  Cristian Darden (22); Caleb Darden (18); and Kennedy Darden (15).  Cristian was born to Jessica Rivera and they both currently reside in New Hyde Park. Cristian is currently in college and his mother Jessica manages a local business in New York.  Because of issues that Calvin Darden, Jr. had with his father growing up, Calvin Darden, Jr. has made it a point to spend as much time with Cristian as he possibly could.  To that point, when Calvin Darden, Jr. moved to Atlanta several years ago to help provide care for his father, Calvin Darden, Jr. would make it a point to fly back to New York at least 2 times per month to spend quality time with Cristian.

Caleb, Calvin Darden, Jr.'s second child, also resides in New York with his mother Jenise Medina. Jenise also manages a local business in New York.  Like Cristian, and prior to his home incarceration and remand in this case, Calvin Darden, Jr. would see Caleb at least two times per month, even though Calvin Darden, Jr. resided in Atlanta, Georgia.  For Calvin Darden, Jr., it was important that both Cristian and Caleb had a present father in their lives, even though he resided more than a thousand miles away.

Kennedy Darden is Calvin Darden, Jr.'s youngest child and his only daughter. She resides with him and his wife, Suhaine Pedroso in Atlanta, Georgia. Calvin Darden, Jr. met Suhaine almost twenty (20) years ago and they were married in 2007. Currently, Sue manages a beauty skincare and clothing line to continue providing for herself and Kennedy.

Although Ms. Darden enjoyed the benefit of having two (2) working parents in his home, his rearing was not perfect. His father's business success came at a sacrifice: he was hardly home with Calvin Darden, Jr.. As a consequence, Calvin Darden, Jr. did not receive the immediate benefit of a working father also being "present". Notwithstanding, periodic rocky times between Calvin Darden, Jr. and his father, Calvin Darden, Jr. loves his father immensely and actually moved to Atlanta, Georgia several years ago to be physically closer to him, and to assist him as he undergoes numerous medical procedures.[1]

His mother, Mrs. Darden, worked long hours and taught Calvin Darden, Jr. how to care for his family. Essentially, Calvin Darden, Jr. learned to care and provide for his family from within his home. To that end, when Calvin Darden, Jr. left college, he wanted to go work and learn to be independent. He wanted to make it on his own. Earning several certificates in the finance industry was Calvin Darden, Jr.'s way of acquiring springboards to opportunities that would facilitate economic longevity and familial stability.

### *A Sentence Not To Exceed 108 Months Is Sufficient for the Crimes of Conviction*

While none of the crimes of conviction have a mandatory minimum term of incarceration, we believe that a sentence not to exceed 108 months satisfies the deterrence requirement for Calvin Darden, Jr.'s criminal conduct. Ms. Darden is a fifty (50) year old man without any prior violent criminal conduct, and he is not a member of any violent gangs.

To be clear, we have no doubt that the Court will sentence Calvin Darden, Jr. to an term of incarceration. The question, then, is "what amount of incarceration would serve to be sufficient related to the crimes of conviction in this matter?" We completely reject, however, that a sentence to exceed 108 months is the appropriate sentence for the crimes of conviction in this matter. Significantly, there is absolutely no statistical evidence that longer sentences equal specific deterrence.

Should the Court sentence him to a sentence not to exceed 108 months imprisonment, he will be close to 60 years old when he is released. At such time he would be aged out of criminal behavior and primarily concerned with his health and providing for his family.

---

[1] Like his father, Calvin Darden, Jr. is beginning the early stages of experiencing medical issues that by all accounts may grow into serious conditions including but not limited to: kidney issues, diverticulitis, difficulty breathing related to heightened exertion and back pain. Each of the previous conditions have required hospitalization and follow up care.

Moreover, any sentence not to exceed 108 months imprisonment will effectively ensure that he does not see his daughter graduate from high school or his second son attend college. More importantly, any sentence not to exceed 108 months s will ensure that Calvin Darden, Jr. misses the death of his father, whom, by all accounts, is likely to die within this calendar year.

Additionally, we must consider whether there is a likelihood of recidivism or a return to criminal behavior. In this case, there almost assuredly will not be. As indicated above, Calvin Darden, Jr. will be approximately 60 years old by the time he is released from prison in this case. At approximately 60 years old, after his third felony conviction, it is the hope that Calvin Darden, Jr. would have aged out of any possible criminal conduct.[2]

There should not be a trial penalty in this matter. In other words, Calvin Darden, Jr. should not punished for exercising his constitutional right to a fair trial. Consequently, we are asking the Court for a reasonable sentence in light of his age, the fact that he was the sole provider of his wife and daughter, that this is a non violent felony conviction, that this crime does not involve gang activity, and by the time Calvin Darden, Jr. is released, he will have lost his father.

***Primary provider for his family***

The extraordinary circumstances of Calvin Darden, Jr.'s family obligations warrant consideration as a basis for a downward variance from the sentencing guidelines. Calvin Darden, Jr. is the sole provider and caregiver for his wife and minor daughter, who depend on him for financial stability and emotional support.

Because his elderly parents, both of whom are in fragile health, rely heavily on him for their care, they moved into the home with he and his daughter. Calvin Darden, Jr.'s mother, due to severe anxiety, does not drive often, and his father does not drive at all. Moreover, Calvin Darden, Jr.'s father suffers from serious medical conditions requiring continuous attention, while his mother depends on him to manage the demands of caregiving and the household. By all accounts, it appears that the Darden family were simply getting Calvin Darden, Sr. comfortable for a smoother transition.

Significant incarceration would not only devastate the well-being of his wife and child but would also leave his aging parents without the essential support they need. While it is our understanding that Calvin Darden, Jr.'s wife, Suhaine, manages a clothing line, this is not consistent and sustainable economic stability. This particular clothing line is, at best, a start-up, and is an endeavor that his wife is pursuing. As a practical matter, Suhaine is unemployed and attempting to begin a business to provide for herself and her daughter.

---

[2] There is no statistical evidence that older defendants re-offend at any notable level.

In this case, the potential risk of harm to the family is inherent in the method of the criminal conduct employed. We also anticipate the Government's argument that Calvin Darden, Jr. was well aware of the possible harm to his family due to his conduct for which he was convicted. However, the harm to the family is a mitigation factor that focuses in on the actual family and not the conduct of the defendant. The harm to Calvin Darden, Jr.'s family is profound presents compelling circumstances that justify a sentence not to exceed 108 months imprisonment, in order to preserve the family unit and mitigate the devastating impact a long term absence would create. Hardship to the family is recognized as a mitigation factor to be considered by the court under 18 U.S.C. 3661.

This court is well versed in the case authorities which permit the consideration of hardship to the family as a basis for sentencing a defendant at variance with the guidelines. In the post *Booker* era, the Court of Appeals has clearly recognized that the district court has the discretion to impose a sentence at variance with the guidelines based upon hardship to the family. *Cf. United States v. Cutler*, 520 F.3d 136, 164-166 (2008). Counsel is aware of the case authorities, and government argument, that hold that all families suffer when a beloved family member serves a period of incarceration, as a necessary consequence of punishment for those who violate ours laws. See, United *States v. Smith*, 331 F.3d 292, 294 (2d Cir. 2008). There is no question that a prison sentence must be imposed to punish Calvin Dardin, Jr. for his criminal conduct. However, in consideration of all the factors under 18 U.S.C. § 3553(a), and the court's authority under 18 U.S.C. 3661, in this case the imposition of a sentence not to exceed 108 months is sufficient but not greater than necessary to punish Calvin Dardin, Jr. and to address the other sentencing goals of Congress.

### *Provide defendant with needed educational, vocational, medical care or other treatment*

As indicated above, Ms. Darden fully appreciated the benefits of education. To that end, he earned a high school diploma and completed significant hours of college at one of the more prestigious colleges in the United States. He thereafter secured several certificates and licenses related to the finance industry, with the intent of securing platforms or springboards for independent financial stability for himself and his growing family.

Hence, we ask the Court to urge the Bureau of Prisons to allow Calvin Darden, Jr. to participate in any and all available educational and employment programs. Furthermore, because of Calvin Darden, Jr.'s age and physical issues we feel it is important that the Court urge the Bureau of Prisons to allow Calvin Darden, Jr. to receive the necessary medical care related to his kidney concerns, diverticulitis and back pain. Finally, we are requesting that the Court urge the Bureau of Prisons to designate a facility as close to the Atlanta, Georgia metropolitan area as possible to enhance family visitation.

## CONCLUSION

The Probation Department, after interviewing Calvin Darden, Jr. and reviewing the case recommended a sentence of 121 months -- the bottom of their calculated Guidelines Range.

Based upon the foregoing, we are recommending that the Court sentence Calvin Darden, Jr. to a downward variance sentence of Calvin Darin, Jr. requests that the court impose a sentence of 108 months, as suggested by the Judiciary Sentencing Information (JSIN) and the court's authority under 18 U.S.C.§ 3553(a), 18 U.S.C. §3661, and *United States v. Booker*, 534 U.S. 220 (2005). [3]

Respectfully submitted,

/s/ *Xavier R. Donaldson*

Xavier R. Donaldson
Attorney for Calvin Darden

cc:     Assistant U.S. Attorney
        Via Email

---

[3] We apologize in advance for the lateness of this submission and consent to any additional time needed by the Government, and consent to any adjournment the Court deems necessary.