UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
                                                            :
UNITED STATES OF AMERICA,                                   :
                                                            :
             -v-                                            :
                                                            :   S3 23-CR-134 (VSB)
                                                            :
CALVIN DARDEN, JR.,                                         :   **ORDER**
                                                            :
                                    Defendant.              :
                                                            :
------------------------------------------------------------X

<u>VERNON S. BRODERICK,</u> United States District Judge:

    Sentencing is scheduled for March 26, 2024 at 11 a.m. in this matter. Although I am not required to do so, *United States v. Sealed Defendant 1*, 49 F.4th 690, 697 (2d Cir. 2022) ("While district courts must 'give the parties reasonable notice that it is contemplating . . . a *departure*,' Fed. R. Crim. P. 32(h) (emphasis added), this requirement does not extend to variances"), the parties should be aware that I am considering an upward variance with regard to the sentencing of Defendant Calvin Darden, Jr. ("Darden, Jr." or "Defendant"). In connection with Defendant's sentencing, in addition to presiding over Darden, Jr.'s trial, to date I have received and read the following: (1) the Presentence Investigation Report ("PSR"); (2) Darden, Jr.'s sentencing memorandum, filed on January 16, 2025, (Doc. 245); and (3) the Government's sentencing letter dated January 21, 2025, (Doc. 246), including five exhibits: text messages between Darden, Jr. and a real estate agent ("Broker"); a letter from the Broker presented to me in connection with the December 23, 2024 bail revocation hearing; the victim impact letter from Chandler Parsons; a preliminary order of forfeiture; and a proposed order of restitution.

    After reviewing the above-listed materials, I have identified additional information that would be helpful to me at sentencing. The parties should supply the requested materials on or

1

before March 19, 2025, if available, and be prepared to address the items below during the sentencing hearing. In making the request for the below information and documents I do not intend to impinge on Darden, Jr.'s Fifth and Sixth Amendment rights, and recognize that any response by the defense may be circumscribed by those rights.

1. The last sentence of paragraph 9 of the PSR states "At the time of his guilty plea, the defendant's bail conditions were amended to include house arrest with electronic monitoring." Should "guilty plea" be replaced by "conviction" in that sentence?

2. I request that the Government provide copies of the text messages referenced in paragraph 42 of the PSR. In addition, please provide any other information produced in discovery that suggests that Darden, Jr. may have deceived Charles Briscoe as to the nature of the Dream scheme.

3. In paragraph 76 of the PSR, should 2022 be 2002?

4. In paragraph 106 of the PSR there are references to a "production company under Darden Enterprises". I request that the Government provide information produced in discovery related to this production company, including information related to: (1) its ownership structure; (2) completed projects, including music videos, television shows, and movies; and (3) its real estate holdings. If no evidence was produced in discovery related to the production company, is there any evidence related to this company in the public record?

5. In paragraph 105 of the PSR, Darden, Jr. referred to Darden Enterprises.

    a. What evidence is there that Darden, Jr. worked for Darden Enterprises in various capacities since 2011?

  b. When was Darden Enterprises incorporated?

  c. Darden, Jr. claims that "he currently spends his time running the real estate development portion of Darden Enterprises, Darden Development, but has no job title." Is there any evidence produced in discovery or in the public record that Darden Development exists and has had real estate development projects?

6. In paragraph 110 of the PSR there are references to Darden, Jr. working at Darden Petroleum & Energy Solutions between September 2015 and 2021.

  a. I request that the Government provide information produced in discovery related to Darden Petroleum & Energy Solutions, including information related to Darden, Jr. working for this company.

  b. If no information was produced in discovery, is there any evidence that Darden Petroleum & Energy Solutions existed and conducted business between September 2015 and 2021?

  c. Is there any evidence that Defendant worked for Darden Petroleum & Energy Solutions other than the verification letter sent to Probation in connection with the Presentence Investigation Report prepared in connection with *United States v. Calvin Darden, Jr.*, 14 Cr. 534 (JSR)?

7. Paragraph 114 of the PSR states that "Darden stated that from approximately 1996 to 2005, he was a financial advisor for five different firms." I request that the Government produce information produced in discovery related to Darden, Jr.'s employment at these five firms, including information from Defendant's cooperation and information related to why Darden, Jr. separated from these

firms.

8. Paragraph 115 of the PSR references Darden, Jr.'s failure to provide a financial statement. Have courts taken other actions when a defendant fails to provide a financial statement other than or in addition to the imposition of a fine?

9. Are there cases where a court upwardly varied at sentencing due to a defendant's violation of a defendant's conditions of pretrial release?

10. During the violation hearing on December 23, 2024, it was represented to me that Defendant's father, Calvin Darden, Sr. ("Senior" or "Sr."), now lives with Defendant at 2716 Ridgewood Road, Atlanta, Georgia (the "Ridgewood Road House"). (Tr. at 24–25.)[1]

    a. When did Senior move into the Ridgewood Road House?

    b. Is Defendant's mother also living in the Ridgewood Road House?

    c. Did Senior and Defendant's mother sell the home they lived in prior to moving into the Ridgewood Road House? If so, when was that house sold?

    d. Do Senior and/or Defendant's mother have any aides to assist them with daily living?

11. During the violation hearing on December 23, 2024, it was represented to me that Defendant's parents have "significant tax issues", and that Internal Revenue Service ("IRS") asked the parents to "liquidate that home." (Tr. at 9.) Please provide proof that the IRS has asked the parents to sell the Ridgewood Road House.

---

[1] "Tr." refers to the transcript of the bail revocation hearing held on December 23, 2024. (Doc. 240.)

12. In the text messages between Darden, Jr. and the Broker there is extensive discussion concerning the Ridgewood Road House.

    a. Is or was the Ridgewood Road House in foreclosure?

    b. Darden, Jr. tells the Broker that the foreclosure was the result of his parents' tax issue and that the issue was taken care of. Is that representation accurate?

    c. In a text message, Darden, Jr. claims that "one of my attorneys [asked] if you could remove the word 'Steinway' from the listing. The Steinway was specifically mentioned in my case, and a point of contention with the prosecutors."

        i. When did the Broker become aware Darden, Jr. had a criminal case? What was the Broker's understanding of the nature of the case?

        ii. Is the reference to "one of my attorneys" a reference to one of Darden, Jr.'s defense attorneys? If so, did defense counsel know that efforts were being made to sell the Ridgewood Road House? If so, did counsel request that the word Steinway be removed from the listing?

13. In the chart on page 3 of the Government's sentencing submission:

    a. It indicates that Patricia Darden received $519,172.00 of the Howard fraud proceeds. Does the Government have an understanding why this money was sent to Patricia Darden?

    b. Who were the miscellaneous individuals who received $732,520.20?

>Does the Government have an understanding why this money was sent to these individuals?

14. On page 6 and 7 of the defense submission it is argued that Darden Jr.'s incarceration would adversely impact his parents, his wife and his daughter. Specifically, on page 7 it states "We also anticipate the Government's argument that Calvin Darden, Jr. was well aware of the possible harm to his family due to his conduct for which he was convicted. However, the harm to the family is a mitigation factor that focuses in on the actual family and not the conduct of the defendant. The harm to Calvin Darden, Jr.'s family is profound presents compelling circumstances that justify a sentence not to exceed 108 months imprisonment, in order to preserve the family unit and mitigate the devastating impact a long term absence would create. Hardship to the family is recognized as a mitigation factor to be considered by the court under 18 U.S.C. 3661." (Doc. 245 at 7.)

   a. The Government points out in their submission that Darden, Jr. referenced the harm his prior crimes caused his father and family in his comments during his sentencing in *United States v. Calvin Darden, Jr.*, 14 Cr. 534 (JSR) ("Your Honor, to say that, you know, I'm sorry is an understatement. More than sorry, I'm embarrassed and ashamed. My father worked his entire life, you know, to—and really built up the Darden name. It's—I can't even begin to explain what this has done, you know, not—not just to my father individually, not just to my entire family, but just our family name. It's beyond embarrassing for having, you know—to

6

have that play out publicly is—is one thing, but it's just, you know, the past two and a half years have been, you know, the worst experience of my life, you know, tore my—tore my family apart. You know, we've been—I've been trying my best to kind of put it back together, as it is solely my fault. I don't really know what else to say outside of the fact that I'm sorry, embarrassed, ashamed, to such a degree that I'm just—I just don't know the words. Thank you.") (Doc. 246 at 4.) Darden, Jr. then went on to commit the crimes of conviction. The instant case represents Defendant's third conviction for fraud, and he violated the terms of pretrial release that I imposed after trial. Defendant committed the instant offenses when he was in his mid-to-late 40s. Defendant is now 50. In light of this history, what evidence is there in the record that I can rely on that Defendant will not recidivate?

    b. Is there evidence in the record that since Defendant's release from prison in connection with his conviction in *United States v. Calvin Darden, Jr.*, 14 Cr. 534 (JSR) Defendant has earned any money from legitimate employment? If so, where was Defendant working, and approximately how much money has Defendant earned during this time period?

    c. Is there evidence in the record that since Defendant's release from prison in connection with his conviction in *United States v. Calvin Darden, Jr.*, 14 Cr. 534 (JSR) Defendant has paid any of his family's expenses?

15. In determining whether or not the fraud "involved sophisticated means and the defendant intentionally engaged in or caused the conduct constituting

sophisticated means," pursuant to U.S.S.G. § 2B1.1(b)(10), can I consider: (1) the use of multiple corporate entities to commit and conceal the frauds; (2) the use of multiple bank accounts to commit and conceal the frauds; (3) the transfer of the fraud proceeds among various bank accounts to commit and conceal the frauds; (4) the deception of Dwight Howard and his professional representatives; (5) the deception of representatives of the Women's Basketball Association ("WNBA") and the Atlanta Dream; (6) the impersonation of Senior in telephone calls and electronic communications with multiple individuals; and (7) the creation of various documents to perpetrate, facilitate and conceal the frauds, including documents that themselves included falsehoods? If so, why are these facts not sufficient to warrant a two-point enhancement? Is there any case law that the defense can point to where a court found that similar circumstances did not warrant a two-point enhancement?

16. Is the Government going to seek forfeiture of Darden, Jr.'s bail?

    a. What property was used to secure Darden, Jr.'s bond?

    b. What is the equity in that property?

    c. Is that property encumbered in any way?

    d. Did the Government take steps to encumber the property securing Darden, Jr.'s bond by filing a lien or by some other mechanism?

17. On page 9 of the Government's sentencing submission, it states "[w]hen [Darden, Jr.] purchased that house, the defendant made sure that his name was kept off the purchasing documents. *See* GX 713A at 3 (purchase agreement listing Senior as the buyer, but providing a phone number belonging to the defendant); *see also id*.

at 2 ('All parties recognize removal of Calvin Darden Jr from Contract. Calvin Darden [Senior] shall replace and henceforth be recognized as buyer.')."

    a. With regard to the removal of Darden, Jr.'s name from the contract, was there any correspondence or discussion of why his name was removed from the contract produced in discovery?

    b. At the time of the removal of Darden, Jr.'s name from the contract was there a mortgage in place on the Ridgewood Road House? If so, in whose name was the mortgage?

    c. From its purchase to the present who paid the mortgage on the Ridgewood Road House?

    d. Did the Broker have a contract for the sale of the Ridgewood Road House prior to the exchange of text messages produced by the Government attached to its sentencing submission? If so, who signed that contract?

    e. Near the end of the text messages with the Broker, Darden, Jr. asks for a copy of the listing agreement, and the Broker sends over certain documents. Please provide copies of these documents.

    f. Other than the letter from the Broker, is there any other evidence in the record that Senior and Defendant's mother were clients of the Broker?

    g. Prior to the text messages attached to the Government's sentencing submission, did the Broker and Defendant have other communications? If so, what was the nature of those communications?

    h. In the text messages between the Broker and Defendant, they discuss a docusign document that Defendant states was "Signed and sent back". Is

there any evidence who signed the docusign? How soon after the request for signature was the document sent back as signed?

18. Did Defendant have a contract with a real estate broker or real estate firm related to the house located on West Paces Ferry Road, Atlanta, Georgia ("West Paces Road House")?

19. Could Defendant's attempt to sell the Ridgewood Road House and attempt to purchase the West Paces Road House be considered a violation of any federal law?

    a. If so, what statutes?

    b. Does the Government have a current intention to file charges related to Defendant's attempt to sell the Ridgewood Road House and attempt to purchase the West Paces Road House?

20. Does Defendant have any interest in the Synovus Bank account referenced on page 11 of the Government's sentencing submission and in text messages with the Broker?

21. Does Defendant's Pretrial Services Officer have the address for the dentist referenced on page 12 of the Government's sentencing submission or can the Government identify that dentist? If so, can the Government determine whether or not Defendant had a dentist appointment on December 5, 2024, and whether that appointment was canceled by the dentist?

22. Has the Government found any evidence that the K. Amber Family Trust referenced on page 12 of the Government's sentencing letter exists? If so, who is the trustee of the Trust and who are the beneficiaries of the Trust?

23. Since being remanded after I revoked Defendant's bail, has Defendant directed others to dispose of any assets whether or not he is listed as the owner of such assets?

24. Since being remanded after I revoked Defendant's bail, has anyone, whether or not directed by Defendant, disposed of or attempted to dispose of any assets listed in the Government's proposed forfeiture order?

25. Has Defendant or anyone else continued to make payments, if needed, related to the assets listed in the Government's proposed forfeiture order?  For example, have payments on the various cars and mortgage payments been made since Defendant's arrest?  If so, who has made those payments?  If not, when did those payments cease to be made?

SO ORDERED.

Dated: February 7, 2025
       New York, New York

_Vernon Broderick_
Vernon S. Broderick
United States District Judge