UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

-against-

CALVIN DARDEN, JR.,

Defendant.

23-CR-134 (VSB)

**OPINION & ORDER**

VERNON S. BRODERICK, United States District Judge:

Currently pending before me is the Government's motion to dismiss, (Doc. 369 ("Motion" or "Mot.")), the forfeiture petition filed by Calvin Darden, Sr. ("Darden, Sr.") and Darden Enterprises, LLC ("Darden Enterprises"), (Doc. 320 ("Petition" or "Pet.")). Darden, Sr.'s petition—even accepting all of his factual assertions as true—fails to state a valid basis for modification under 21 U.S.C. § 853(n). Therefore, the Government's motion to dismiss Petitioners' forfeiture petition is GRANTED, and the Petition is DENIED.

## I. Factual and Procedural Background

On March 23, 2023, the indictment against Calvin Darden, Jr. ("Defendant" or "Darden"), among others, was unsealed. (Doc. 3.) On July 18, 2024, a five-count superseding indictment was filed against Defendant. (Doc. 142 ("Superseding Indictment").) Count One of the Superseding Indictment charges that, from at least 2019 through in or about 2021, Defendant conspired and agreed with other people to commit wire fraud and bank fraud. (*Id.* ¶¶ 16–19.) Count Two of the Superseding Indictment charges that during that same period Defendant committed wire fraud. (*Id.* ¶¶ 20–21.) Count Three of the Superseding Indictment charges that,

from in or about 2020 through in or about 2021, Defendant committed bank fraud. (*Id.* ¶¶ 22–23.) Counts Four and Five of the Superseding Indictment charge that, from in or about 2019 through in or about 2021, Defendant conspired and agreed with others to commit money laundering and committed money laundering, respectively. (*Id.* ¶¶ 24–28.) After an eleven-day jury trial between September 17, 2024 and October 4, 2024, the jury returned a verdict convicting Darden on all five counts. (Doc. 192.)

Defendant filed a motion for acquittal on November 13, 2024, (Doc. 231), which I denied in an Opinion & Order dated March 25, 2025, (Doc. 268 ("Opinion" or "Op.")). On April 3, 2025, I sentenced Darden to 151 months' imprisonment on each count to run concurrently, five years of supervised release on Counts One and Three, and three years of supervised release on Counts Two, Four, and Five.[1] (Doc. 277.) On April 3, 2025, I signed a preliminary order of forfeiture, (Doc. 275), since the Indictment included forfeiture allegations related to any and all property constituting or derived from proceeds the Defendant obtained directly or indirectly as a result of the offenses charged, which included "[t]he real property known as 2716 Ridgewood Road NW, Atlanta, Georgia, 30327, in the City of Atlanta, Fulton County, GA," (the "Property") (*id.* at 3).[2] On approximately June 25 and June 26, 2025, the Government mailed notice of the preliminary order of forfeiture to Darden Enterprises. (Mot. 13.) "On or about August 28, 2025,

---

[1] Darden requested in writing that his appearance at his sentencing be waived. (Doc. 271.) I denied that request, and directed that Darden appear before me so that I could "confirm the knowing and voluntary nature of his waiver . . ." (Doc. 272.) I questioned Darden on April 3, 2025, about his desire to waive his presence during sentencing, and after satisfying myself that Darden knew of his right to be present during his sentencing and that he was knowingly and voluntarily waiving that right, I granted his request to absent himself from his sentencing. (Doc. 283 at 2:21-10:8.)

[2] On August 14, 2026, the Government moved for the entry of a Preliminary Order of Forfeiture as to Substitute Assets ("Substitute Assets Order") to forfeit certain additional assets of the Defendant and apply their proceeds towards the Defendant's money judgment in the preliminary order of forfeiture. (Doc. 506.) In its motion, the Government advised that "the expected liquidation value of the [] Property is far below the amount of the [m]oney [j]udgment." (*Id.* at 3 n.1.) On August 20, 2026, I signed the Substitute Assets Order. (Doc. 510.)

the Government sent direct notice to Darden Sr. via email." (*Id.*) On September 3, 2025, Hyperion Bank filed a notice of verified claim and statement of interest in the property. (Doc. 311.) On September 29, 2025, Petitioners Calvin Darden, Sr. and Darden Enterprises (together "Petitioners") brought the Petition to adjudicate the validity of their interest in the Property.[3] (*See* Pet.)

Petitioners executed the closing documents for the purchase of the Property on April 15, 2021. (Doc. 320-2–4.) Petitioners claim that the funds used to purchase the property were in their possession and control rather than that of Defendant. (Pet. 2.) Petitioner Calvin Darden, Sr. and his wife Patricia Gail Darden allege that the Property was listed on their tax returns since 2021. (*Id.*) Further, in December 2024, because the mortgage loan on the property was in default, Petitioners entered into an agreement with Hyperion Bank to preserve the property for foreclosure. (*Id.*; *see also* 320-6.)

On October 1, 2025, the Government filed a proposed briefing schedule regarding their motion to dismiss the Petition, (Doc. 346), and I approved the proposed schedule, (Doc. 350). The Government submitted its initial papers in support of its motion to dismiss on December 8, 2025. (Mot.) Rather than file an opposition, Petitioners filed a declaration of bankruptcy on January 23, 2026. (Doc. 430.) The Government filed a response to the declaration of bankruptcy on January 24, 2026. (Doc. 434.) The Government filed further papers in support on February 7, 2026, (Doc. 448), and on February 28, 2026, (Doc. 486). On November 5, 2026, Hyperion Bank filed a letter seeking clarity regarding the disposition of the Property. (Doc. 514.)

[3] Darden, Sr. did not verify the Petition. The verification attached to the Petition was signed by Patricia Gail Darden, Darden, Sr.'s wife, "as power of attorney". (Pet. 5.)

## II. Legal Standard

Title 21, United States Code, Section 853(n) provides that a third party seeking to assert an interest in forfeited property must first establish that they have a "legal interest" in the property. 21 U.S.C. § 853(n). A third party "asserting a legal interest in [the] property . . . may, within thirty days of the final publication of notice or his receipt of notice . . ., whichever is earlier, petition the court for a hearing to adjudicate the validity of his alleged interest in the property." *Id.* § 853(n)(2). "Following the court's disposition of all petitions filed . . ., or if no such petitions are filed following the expiration of the [thirty-day] period . . ., the United States shall have clear title to [the] property. . . ." *Id.* § 853(n)(7). In order to establish such a legal interest, a petitioner must allege one of two alternative bases for recovery:

> (A) the petitioner has a legal right, title, or interest in the property, and such right, title, or interest renders the order of forfeiture invalid in whole or in part because the right, title, or interest was vested in the petitioner rather than the defendant or was superior to any right, title, or interest of the defendant at the time of the commission of the acts which gave rise to the forfeiture of the property under this section; or
>
> (B) the petitioner is a bona fide purchaser for value of the right, title, or interest in the property and was at the time of purchase reasonably without cause to believe that the property was subject to forfeiture under this section . . .

*Id.* § 853(n)(6). If a petitioner can establish by a preponderance of the evidence that it has a legal interest in the property superior to the Government's interest, the court should amend the order of forfeiture to reflect this interest. *See id.*; *United States v. Ribadeneira*, 105 F.3d 833, 834–35 (2d Cir. 2007). However, § 853(n)(6) works in conjunction with the "relation-back" doctrine

> embodied in § 853(c), which provides that all property subject to forfeiture based on a criminal offense vests in the United States upon the commission of the offense. . . . Because forfeitable property vests in the government immediately upon the commission of a criminal act, a third party may prevail under § 853(n)(6)(A) only by establishing that he had a legal interest in the forfeited property before the underlying crime was committed—that is, before the government's interest vested.

*United States v. Watts*, 786 F.3d 152, 166 (2d Cir. 2015) (internal quotation marks omitted). This means that § 853(n)(6)(A) "is better suited to defending a third party's right to the 'instrumentalities' of a crime—property used by a defendant to facilitate his criminal acts, but that pre-exists those acts themselves—than to proceeds that necessarily arise only after or upon the commission of the crime." *Id.* at 167 (quoting *United States v. Hooper*, 229 F.3d 818, 822 (9th Cir. 2000)).

In addition, a court considering a motion to dismiss a petition related to criminal forfeiture must apply the same pleading standards governing motions to dismiss civil complaints. *Pacheco v. Serendensky,* 393 F.3d 348, 352 (2d Cir. 2004). In particular, "the facts set forth in the petition are assumed to be true" for purposes of this motion. Fed. R. Crim. P. 32.2(c)(1)(A).

## III. Discussion

The Petition asserts that "[t]he Forfeiture Order is invalid in whole or in part because Petitioners' right, title, or interest was vested in the Property, rather than Defendant Darden, Jr. or any other person at the time the alleged acts supposedly giving rise to the forfeiture of the property under 21 USC § 853(n) were committed." (Pet. 3.) The Petition is not supported by the law or the facts.

The Petition fails for at least three reasons – two of which are procedural and one substantive. First, any petition to adjudicate an interest in property under § 853 must be filed within thirty days of "the final publication of notice or [petitioner's] receipt of [actual] notice . . ., whichever [was] earlier." 21 U.S.C. § 853(n); *see also United States v. Kahnawake-Mohawk Indus., Inc.,* No. 00-CR-0523, 2010 WL 3119186, at *2 (E.D.N.Y. Aug. 3, 2010) ("final opportunity to file a petition with this Court expired" thirty days after notice); *In re Dreier LLP*, 452 B.R. 391, 411 (Bankr. S.D.N.Y. 2011) ("The failure to file a petition within this thirty-day

time period extinguishes a third party's interests." (quoting *United States v. Marion*, 562 F.3d 1330, 1339 (11th Cir.2009)). Here, the Petition was filed more than two months after notice was mailed to Darden Enterprises and more than 30 days after Darden, Sr. received direct notice by email. *See United States v. Sze*, No. 22-CR-0141, 2024 WL 195468, at *12 (D.N.J. Jan. 18, 2024) ("Courts have routinely held that the deadline for filing petitions in section 853(n)(2) is mandatory.").

Second, the Petition must be "signed by the petitioner under penalty of perjury and shall set forth the nature and extent of the petitioner's right, title, or interest in the property, the time and circumstances of the petitioner's acquisition of the right, title, or interest in the property, any additional facts supporting the petitioner's claim, and the relief sought." 21 U.S.C. § 853(n)(3). Here, the Petition is not signed by Darden, Sr., who is alleged to hold an interest in the property, but rather by Patricia Gail Darden, "as power of attorney," who is not alleged to have such an interest. It is black letter law that "in order to contest a governmental forfeiture action, claimants must have both standing under the statute or statutes governing their claims and standing under Article III of the Constitution as required for any action brought in federal court." *United States v. Cambio Exacto, S.A.*, 166 F.3d 522, 526 (2d Cir. 1999). Patricia Gail Darden lacks standing to bring a proper claim under the statute and Darden, Sr. fails to bring such a claim. As another court in the Circuit explained, the perjury requirement "is no mere formality," because of the significant risk "of false claims in forfeiture proceedings." *United States v. Speed Joyeros, S.A.*, 410 F. Supp. 2d 121, 124 (E.D.N.Y. 2006) (citing *Mercado v. U.S. Customs Service*, 873 F.2d 641, 645 (2d Cir. 1989). "Requiring the claimant to sign personally under penalty of perjury serves the government's legitimate interest in protecting forfeited assets," and "[s]trict compliance" is "typically required" although "a court has discretion in appropriate circumstances

to depart from the strict compliance standard." *Id.* Petitioners do not even attempt to demonstrate that Patricia Gail Darden had the legal authority to sign on behalf of Darden, Sr. or, even assuming she had the authority, that her signing would support standing.

In any event, because the Petition fails on the merits, I need not determine whether the procedural infirmities with the Petition alone would warrant dismissal. A petitioning third party must establish a "legal interest" in forfeited property. *Watts*, 786 F.3d at 161. "[A] third-party petitioner has two statutory grounds on which to assert a legal interest in forfeited property," either by showing by a preponderance of the evidence that they had "a superior interest in the property at the time of the relevant offense," or that they were a "bona fide purchaser for value of the property and that at the time of the purchase [were] reasonably without cause to believe that the property was subject to forfeiture." *United States v. Swiss*, No. 23-CR-664, 2025 WL 2962680, at *2 (S.D.N.Y. Oct. 21, 2025) (internal quotation marks omitted).

Although the Petition is not clear which of the enumerated bases it is predicated on, that lack of clarity does not matter since there can be no legally cognizable claim that Petitioners had a superior interest in the Property at the time of the fraud scheme or that Darden, Sr. was a bona fide purchaser for value. The proceeds of the fraud scheme were used to purchase the Property. The law is clear that "the government's interest in the proceeds of a fraud vests as soon as those proceeds come into existence, and is therefore superior to that of any subsequent third-party recipient of those funds (unless the third party is a bona fide purchaser for value.)" *United States v. Daugerdas*, 892 F.3d 545, 548 (2d Cir. 2018). "[C]ourts have recognized that a petitioner is unlikely ever to prevail at an ancillary hearing under § 853(n)(6)(A) where the forfeited property consists of 'proceeds' derived from or traceable to a criminal offense[ ] [b]ecause, by definition, the proceeds of an offense do not exist before the offense is committed." *Watts*, 786 F.3d at 166.

As I explained in the Opinion, "Howard sent $7 million to Darden and Briscoe and he received nothing in return," and "rather than spend the money to purchase the [Atlanta] Dream or to finance Darden Sports Group—as Darden claimed at trial and in his brief—he went on an almost $6 million personal spending spree shortly after taking possession of Howard's $7 million." (Op. 8–9.) Said differently, the down payment for the Property, made on April 14, 2021, for $665,765.20, consisted predominantly, if not exclusively, of funds obtained as a result of Defendant's fraud scheme.[4] (Mot. 9–11.) Therefore, the Petition cannot succeed on a superior interest theory.

The Petition also contains no concrete and particularized allegations that Darden, Sr. was a bona fide purchaser for value. (*See generally* Pet.) Absent allegations establishing that Darden, Sr. is a bona fide purchaser, Darden, Sr. lacks standing. *See United States v. Tucker*, No. 16-CR-91, 2020 WL 6891517, at *4 (S.D.N.Y. Nov. 24, 2020) ("The petitioner has the burden to prove her legal right, title or interest in the property by a preponderance of the evidence." (citing *Watts*, 786 F.3d at 161)). It is axiomatic that "in determining standing in civil forfeiture cases, the court must look beyond bare legal title and examine whether the record owner is the true owner, or merely a 'strawman' set up to avoid forfeiture." *United States v. One Red 2003 Hummer H2*, 234 F.Supp.3d 415, 419 (W.D.N.Y. 2017); *see also United States v. M/Y Amadea*, 770 F. Supp. 3d 558, 604 (S.D.N.Y. 2025) ("[T]itle alone is not enough to establish standing. Instead, a claimant must establish it possesses some of the other indicia of ownership (e.g., possession, dominion/control, or a financial stake)."). Here, the Government has shown that Defendant had possessory and controlling interest in the Property and that "claimant was

[4] Petitioners do not dispute that the money used to purchase the property was obtained as a result of Defendant's fraud scheme.

merely a nominal or straw owner." *See United States v. Vehicle: One 1990 Nissan Pathfinder*, No. 92-CV-1336, 1994 WL 476704, at *4 (N.D.N.Y. Sept. 2, 1994) ("The mere fact that the claimant held the title, registration, and insurance in her name does not confer an ownership interest on the" property subject to forfeiture.). In other words, the Government demonstrated that Defendant was the primary purchaser of the Property on the initial proposed sale agreement and controlled the funds used to make the purchase. (Mot. 11.) Although Petitioner Darden, Sr. was listed as the primary purchaser in the final sale, (*id.*), the phone number for Darden, Sr. was one that Defendant controlled and used during the perpetration of the fraud scheme, and Defendant had often impersonated Darden, Sr. during the fraud scheme, (*id.* at 8–9). Further, as in *M/Y Amadea*, the fact that Petitioners themselves "did not 'pay' for the transaction" cuts against the argument that they held an ownership interest in the Property. 770 F. Supp. 3d at 615. Rather, the undisputed source of all the funds used to purchase the Property was the Defendant and his fraud scheme. (Mot. 9–11.)

"In light of the Government's prima facie showing of straw ownership, the burden shifts to Claimants to establish some incident of ownership other than bare title." *M/Y Amadea*, 770 F. Supp. 3d at 618; *see also United States v. 14K Miami Cuban Chain, VL: $23,000.00*, No. 22-CV-380, 2023 WL 4546235, at *3 (N.D.N.Y. July 14, 2023) ("[D]istrict courts within the Circuit have routinely required claimants to establish a possessory or ownership interest in the specific forfeited property to show Article III standing.") Here, Petitioners fail to make such a showing. All Petitioners have to support their claim to standing are conclusory allegations that Petitioner and his wife reported their property on their joint tax return filings and entered into a forbearance agreement to preserve the property for foreclosure. (Pet. 2.) These kinds of attendant formalities to title are insufficient "indicia" of ownership. The Second Circuit has explained that it is

"abundantly clear that the district court did not err in holding that [a] father was a mere straw owner and lacked standing to assert a claim as innocent owner," when the only facts supporting his standing were that "he was obligated to continue to make payments on the mortgage" even though he and his wife "had given the property to their son." *United States v. Premises & Real Prop. with Bldgs., Appurtenance & Improvements at 500 Delaware St., Tonawanda, New York*, 113 F.3d 310, 312 (2d Cir. 1997).

*United States v. Certain Real Prop. Located at River Rd., Eliot, York Cnty., Me.*, a 1993 case from the District of Maine, is instructive. 839 F. Supp. 1, 1 (D. Me. 1993), *aff'd,* 23 F.3d 395 (1st Cir. 1994) ("*River Rd.*"). In *River Rd.*, Dana Snodgrass, Sr. owned property in Maine and local law enforcement "began to receive . . . information that substantial drug trafficking activity was being carried" out on the property. *Id.* When Snodgrass, Sr. received word from local authorities that he was under investigation, he conveyed the property to his son, Dana Snodgrass, Jr. *Id.* at 2. Snodgrass, Jr. went on to bring a petition which the court dismissed because the court concluded that the transfer was designed "to evade the onus of the forfeiture law." *Id.* Although the transfer here was from son to father rather than father to son, it bears many of the same hallmarks that led the court in *River Rd.* to conclude that the transfer "was not intended to convey any right of dominion or control over, or even any beneficial interest in, the Defendant property." *Id.* at 3. In this case, Defendant was a two-time convicted fraudster who was initially listed as a purchaser of the property along with his father. (Mot. 11.) He was the signatory of the bank accounts involved in the purchase and controlled each aspect of the purchase. (*Id.*) Therefore, as in *River Rd.*, I do not find that Petitioners' legal title in the Property entitles them to standing to contest forfeiture absent further indicia of possession or control beyond those enumerated in the Petition.

This conclusion is bolstered by Petitioners' litigation activities. Rather than defend the Petition on the merits, Petitioners strategically attempted to file for bankruptcy to stay forfeiture proceedings. To be sure, 11 U.S.C § 362 provides that a petition for bankruptcy filed under sections 301, 302, or 303 of title 11 "operates as a stay, applicable to all entities, of" among other things "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate." 11 U.S.C § 362(a)(3). However, some courts have held that criminal forfeiture actions are not subject to the automatic stay provision, applying the "governmental unit" exception set forth in 11 U.S.C § 362(b)(4). *In re GuildMaster, Inc.*, No. 12-62234, 2013 WL 1331392, at *7 (Bankr. W.D. Mo. Mar. 29, 2013) ("[C]riminal forfeiture proceedings fall within the police power exception to the automatic stay."); *In re Duval at Gulf Harbors, LLC*, 515 B.R. 884, 887 (Bankr. M.D. Fla. 2014) ("[C]riminal forfeiture proceedings are exempt from the automatic stay by 11 U.S.C. § 362(b)(4),"); *United States v. Annamalai*, No. 13-CR-437, 2017 WL 11341083, at *1 (N.D. Ga. Jan. 5, 2017) (same), *but see In re Blockfi, Inc.,* No. AP 23-01144, 2024 WL 358112, at *5 (Bankr. D.N.J. Jan. 30, 2024) ("The United States exercise of its police and regulatory powers under § 362(b)(4) is not completely unfettered. The Third Circuit employs two tests—the pecuniary purpose and public policy tests—to determine whether proceedings fall within the police power exception to the automatic stay"). In any event, the bankruptcy was dismissed on February 23, 2026, and can no longer operate as a stay. (Doc. 486-1; *see also* 11 U.S.C § 362(c)(2) ("[T]he stay . . . continues until . . . the time the case is dismissed.").) Therefore, there is no bar to granting the Government's motion to dismiss the Petition.

## IV. Conclusion

For the reasons stated herein, the Government's motion to dismiss, (Doc. 369), is GRANTED, and the Petition, (Doc. 320), is DENIED.

SO ORDERED.

Dated: November 13, 2026
New York, New York

Vernon S. Broderick
United States District Judge